(42 App. Div. 472.)

### SPENCER v. TOWN OF SARDINIA.

(Supreme Court, Appellate Division, Fourth Department. July, 1899.)

1. APPEAL—VERDICT—CONFLICTING EVIDENCE.
    A verdict on conflicting evidence will not be disturbed.

2. TOWN—INJURY FROM DEFECTIVE BRIDGE—NOTICE.
    Where a highway commissioner, who is notified of the decayed condition of the timbers of a bridge, makes an inspection of it, but thereafter does not repair it, he is negligent, and the town will be liable for an injury resulting from its condition.

3. SAME—CONTRIBUTORY NEGLIGENCE.
    One who attempts to take an engine weighing nearly 8,000 pounds over a bridge which, on examination by him, appears to be in a decayed and dilapidated condition, riding on the engine, instead of setting it and letting it go across alone, when there is a driveway on the side of the bridge that he might have used with safety, is guilty of contributory negligence.

4. SAME—NOTICE BEFORE SUIT.
    Under Laws 1890, c. 568, § 16, providing that no action can be maintained against a town for damages to person or property caused by a defective bridge, unless a verified statement of the cause of action shall have been presented to the superintendent of the town within six months after the cause of action accrued, a sworn statement seasonably served on the superintendent by the administratrix of a person killed on a bridge, in the form of an account, as follows: "To damages resulting from the death of F. S., caused by the breaking of an unsafe and defective bridge on the highway of said town near the residence of H., $20,000,"—is sufficient.

Appeal from trial term, Erie county.

Action by Ella D. Spencer, administratrix of Frank Spencer, deceased, against the town of Sardinia, for damages for the death of her intestate. There was a verdict for plaintiff for $4,000 at the Erie trial term, and thereafter an order denying a motion for a new trial was made. Judgment was entered for plaintiff, and defendant appeals from the judgment and from the order. Reversed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

John Cunneen, for appellant.
Willard H. Ticknor, for respondent.

HARDIN, P. J. On the 26th day of September, 1897, the plaintiff's intestate was in charge of and operating a traction engine in the defendant town, and was proceeding westwardly along the highway near the residence of Mr. Henshaw, riding upon the engine, and, while his engine was upon the bridge across a sluiceway, the bridge gave way and precipitated the engine down, and the intestate was thrown under the vehicle, and so bruised and scalded that

he died the same day from the injuries received. The plaintiff's complaint alleges the circumstances attending the accident, and that "on the 10th day of November, 1897, this plaintiff caused to be served upon Ransom W. Savage, Esq., a supervisor of the town of Sardinia, Erie county, N. Y., a duly and properly verified claim or demand against the said town of Sardinia for damages resulting from the death of said Frank Spencer, claiming the sum of twenty thousand dollars." This action was brought to recover the damages mentioned in said claim and complaint on the 11th of December, 1897. The answer denies the allegations of the complaint, and alleges that the injuries resulted "because of the negligence of the said Frank Spencer in attempting to cross the bridge in the complaint mentioned with the vehicle or load which altogether weighed more than four tons."

1. Upon the trial considerable evidence was given in respect to the weight of the traction engine at the time the injuries occurred. The plaintiff's evidence tended to show that the engine did not weigh to exceed 7,822 pounds. Evidence, however, was given on the part of the defendant tending to indicate that the engine weighed over the statutory limit of 8,000 pounds. Upon such conflicting evidence the question of fact in that regard was for the jury, and was found upon sufficient evidence, so that we must accept the conclusion, upon the whole evidence, that the weight of the engine was inside of the limit of 8,000 pounds at the time the intestate received the injuries.

2. The evidence given at the trial sufficiently indicates that the bridge was in a decayed, dilapidated condition at the time of the occurrence of the accident. According to the evidence, the bridge failed by reason of the decayed condition of some of the timbers, and especially of the cap piece forming the top of the westerly bent of the bridge resting upon the top of the post. The break occurred when the rear wheels of the traction engine had fully reached that part of the bridge, and it went down suddenly. The bridge had been built several years, and was one of some 150 maintained in the defendant town. Seymour Ryder was the highway commissioner prior to the spring of 1896, and the witness Henshaw testifies to an occasion when he went with Ryder down on the land and looked under the bridge. In his testimony he says:

"I notified him the bridge needed fixing. That was three years ago this summer. I told him the west cap was rotten and the end had fallen off,— part of it. He came there to look at it, and we went down together. He said it would last as long as he was commissioner. I think it was in August, 1895. It was three years ago. I said the west cap was rotten and the end had partly fallen off, and it was rotten all through. He did not repair it, and it had not been repaired until after it fell."

There is some slight contradiction of the exact language of this conversation; but the fact of the inspection and of the notification of Ryder, the commissioner, is made apparent by the evidence.

In the course of the opinion delivered in this court in Allen v. Town of Allen, 33 App. Div. 463, 53 N. Y. Supp. 800, it was said:

"Notice to a commissioner of highways is notice to the town in cases of injury resulting from defective highways and bridges; and it is not necessary that the notice should have been received by the commissioner in office at the

time of the injury complained of. It is sufficient if the defect had existed during the term of office of a prior commissioner. It is the commissioner who receives the notice, and not the individual. Bullock v. Town of Durham, 64 Hun, 380, 19 N. Y. Supp. 635; Shaw v. Town of Potsdam, 11 App. Div. 508, 42 N. Y. Supp. 779. Where the defect in the highway has existed for such a length of time as that the commissioner ought, with reasonable care, to have known of and remedied it, the town or municipality has constructive notice of such defect,"—citing Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095; Weed v. Village of Ballston Spa, 76 N. Y. 329; Todd v. City of Troy, 61 N. Y. 506; Requa v. City of Rochester, 45 N. Y. 129.

The evidence given in respect to the condition of the bridge sufficiently indicates that it was left in an improper condition, and that it had so far advanced in age, in decay, and impairment that it was the duty of the commissioner in charge to have made amendments and reparations thereof, and that the omission to do so was negligence on his part.

3. Assuming, as we have already said, that the weight of the traction engine was inside the statutory limit, the intestate was aware of its extraordinary weight, and of the strain that it would subject the bridge to in an attempt to cross it, and as he approached the bridge he evidently reflected upon the propriety of passing over the bridge with the traction engine. At one side of the bridge was a way that was more or less traveled, that people had frequently used instead of crossing the bridge, and in some instances engines of large weight had taken the sideway, and avoided crossing the bridge. The intestate elected not to take the sidepath, but to venture upon this bridge with his traction engine, after he had examined, to some extent, the bridge. The evidence indicates that he, before driving his engine upon it, went to parts of the bridge and examined with a view of determining whether it was adequate to bear the weight of his engine, and then, instead of doing as some others who had operated traction engines, setting his engine and remaining on the ground when it was crossing the bridge, he mounted his engine and started across the bridge on his engine. Before doing so, the witnesses say, he had made a personal examination of the condition of the bridge. The witness Duane Henshaw says as follows:

"I saw Frank Spencer, before he attempted to cross the bridge that day, go down under the bridge, take his knife out, and stick it into the stringers crossing the bridge. He did nothing more than look around. I heard my brother-in-law Boyce tell him it was a pretty shaky old thing. Frank replied, 'We have to take lots of chances.'"

The witness Boyce, in the course of his testimony, said:

"I thought it looked as though Frank looked the bridge over, and stuck something up into the joist of the bridge. I did not see him test the timbers in any other way. I did not hear the conversation between him and my father. I was on the south side of the bridge, about twelve feet away. * * * I was up at Henshaw's when he attempted to cross the bridge. The engine stood east of the bridge when they were examining it,—stood in the road. * * * It might have been a couple of rods, maybe not so far."

It was in evidence that on some occasions in passing over a similar bridge with a traction engine the party operating the same had provided himself with a plank, and, when there was doubt about the adequacy of the bridge to be crossed, plank were used to guard

against accidents; and there is evidence to indicate that people had gone by the sidepath with engines, rather than pass over the bridge. The witness Hiram Henshaw says the sidepath on the south side of the bridge had existed a long period of time, and that "people have driven around there all that time. A great many people drive through there and water their horses."

Upon the evidence to which reference has been made, as well as the other evidence found in the appeal book, it is apparent the intestate deliberately took the chances of crossing an infirm and dilapidated structure, and it is difficult to deduce from the evidence the conclusion that he was free from contributory negligence. It would seem that a reasonably prudent man, with knowledge of all the circumstances known to the intestate, would have avoided the risk of venturing upon the bridge in question, and avoided the dangers incident to an attempt to pass the engine over it in the manner in which the intestate did. Durkin v. City of Troy, 61 Barb. 455. Understanding, as the intestate did, the weight of his engine, the age of the bridge, its decayed condition, and the strain that the traction engine would subject it to, it may be said that he was imprudent in not either sending his engine in the sidepath, or, if he was to venture to pass it over the bridge without the aid of plank, he certainly could have taken the precaution to have sent it over without being upon it, where he would expose himself to the injuries which came to him. Kleng v. City of Buffalo, 72 Hun, 544, 25 N. Y. Supp. 445. In Odell v. Railroad Co., 120 N. Y. 325, 24 N. E. 478, it appears that an action was brought to recover for injuries sustained from the unexpected starting of machinery while the plaintiff was engaged in changing saws, and the court, in dealing with the question, observed, viz.:

"The defendant's evidence tended to show that the plaintiff, having full knowledge of the existence of the defect complained of, nevertheless continued to use the machinery until the happening of the accident. If such were the fact, defendant is not chargeable with the consequences resulting therefrom. Powers v. Railroad Co., 98 N. Y. 274; Monaghan v. Railroad Co., 45 Hun, 113."

The same doctrine was again repeated in McQuigan v. Railroad Co., 122 N. Y. 622, 26 N. E. 13.

We think the evidence in the case requires us to say that the intestate assumed the risk incident to the use he made of the defective bridge. Whalen v. Gaslight Co., 151 N. Y. 74, 45 N. E. 363. The plaintiff has not successfully borne the burden cast upon her of furnishing evidence that her intestate was free from contributory negligence. Neddo v. Village of Ticonderoga (Sup.) 28 N. Y. Supp. 887; Weston v. City of Troy, 139 N. Y. 283, 34 N. E. 780. We see nothing in Scanlon v. City of Watertown, 14 App. Div. 1, 43 N. Y. Supp. 618, which aids the contention of the respondent on the branch of the case we have just been considering.

4. Plaintiff's right of recovery depends upon the provisions of section 16 of the highway law (Laws 1890, c. 568). That section is as follows:

"Every town shall be liable for all damages to person or property, sustained by reason of any defect in its highways or bridges, existing because of the

neglect of any commissioner of highways of such town. No action shall be maintained against any town to recover such damages, unless a verified statement of the cause of action shall have been presented to the supervisor of the town, within six months after the cause of action accrued."

Before this action was commenced, and seasonably, the plaintiff served upon the supervisor of the town a statement containing the following language, to wit:

"Town of Sardinia, to Ella D. Spencer, administratrix of the estate of Frank Spencer, late of the town of Sardinia, Erie county, N. Y., debtor. To damages resulting from the death of Frank Spencer, caused by the breaking of an unsafe and defective bridge in the highway in said town near the residence of Mr. Henshaw, $20,000.

"[Signed]                          Ella D. Spencer, Administratrix."

Subjoined to that statement was her affidavit, in which she stated that she was a resident of the town of Sardinia, and "that she is the sole administratrix of the estate of Frank Spencer, deceased, and was appointed by the surrogate's court of Erie county such administratrix on November 3, 1897; that she is duly qualified, and is now acting as such administratrix; that as such administratrix she presents the foregoing claim, which is in all respects just and true. * * *" From the language of the notice it was discernible that the administratrix of Frank Spencer claimed damages from the town, and asserted that the town had become a debtor to her by reason of damages "resulting from the death of Frank Spencer"; and it is discoverable that the statement, in effect, alleged that the damages thus sustained had been "caused by the breaking of an unsafe and defective bridge in the highway in said town near the residence of Mr. Henshaw." From the signature to the statement, and from her affidavit, it was made apparent to the town officer receiving the statement that she was administratrix of Frank Spencer's estate, and that as such administratrix she claimed that the town was indebted to her, and that the cause for the indebtedness was the occurrence of damages "caused by the breaking of an unsafe and defective bridge in the highway in said town." While the language is somewhat general, apparently it is a substantial compliance with the requirements of the section, in that it contained a statement of her supposed cause of action to the supervisor. The language differs from that found in several of the city charters which have been under construction. In Paddock v. City of Syracuse, 61 Hun, 8, 15 N. Y. Supp. 387, the statute prescribing a notice required that it, among other things, should state "the cause of such injury or damage"; and the notice was held to be insufficient, because it did not contain a "statement of what produced the injury or damage,— a specification of the defect or improper condition complained of." In the statement before us there is an allegation that the damages resulted or were "caused by the breaking of an unsafe and defective bridge in the highway." In the Paddock Case it was held that the notice was too general as to the character of the defects complained of. See Sullivan v. City of Syracuse, 77 Hun, 442, 29 N. Y. Supp. 105. In the course of the opinion delivered in Werner v. City of Rochester, 77 Hun, 34, 28 N. Y. Supp. 227, in considering the ques-

tion of the sufficiency of a notice of intention to commence an action, Haight, J., said:

"The statute requires that the claim presented for audit in case of injury shall state 'when, where, and how occasioned.' This statute should receive a reasonable construction. The time, place, and circumstances should be given with reasonable accuracy, so as to enable the officers charged with the duty of investigating the circumstances to determine whether the claim is meritorious."

That case was affirmed by the court of appeals. 149 N. Y. 563, 44 N. E. 300.

It is to be observed that the provision of the statute in section 16 differs from the provision found in section 481 of the Code of Civil Procedure, in subdivision 2, which provides for the contents of a complaint, and prescribes the rule therefor, to wit, "a plain and concise statement of the facts constituting each cause of action." The statement in the case in hand may be said to be general in giving the essential facts which constitute the plaintiff's alleged cause of action against the defendant. We are inclined to think it was a substantial compliance with the statute, and was sufficiently definite and specific to give the authorities. of the town opportunity to investigate and to determine whether they would allow the claim or not for damages resulting from the death of the intestate, alleged to have been "caused by the breaking of an unsafe and defective bridge in the highway in said town near the residence of Mr. Henshaw." We discover nothing in Borst v. Town of Sharon, 24 App. Div. 600, 48 N. Y. Supp. 996, which differs from the views already expressed. In the course of the opinion in that case it was assumed that the purpose of the statute was to give the town notice of the character of the claim, and opportunity to investigate it and adjust it if proper, and that the service of such a notice was prerequisite to the bringing of an action. In that case there had simply been a letter to the supervisor of the town, which was not returned, as not being a statement required by the statute; and the court held that that was insufficient, and that the omission to return it was not a waiver of the statutory requirement.

The foregoing observations would lead to the conclusion that the statement was a sufficient compliance with the requirements of the statute. When the plaintiff rested, a motion for a nonsuit was made and denied, and the defendant took an exception thereto; and at the close of the whole evidence a motion was made that the jury be directed to render a verdict in favor of the defendant of no cause of action. That motion was denied, and the defendant excepted thereto. After the verdict was rendered, the defendant moved for a new trial on the minutes, upon the exceptions taken in the course of the trial, and also upon the ground that the verdict is contrary to the evidence and contrary to law, which motion was denied. We think the order denying the motion for a new trial should be reversed, and also the judgment, and a new trial should be ordered.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.