JOHNSON v. TOWN OF DENNING.

(Supreme Court, Appellate Division, Third Department. June 29, 1905.)

1. BRIDGES—COLLAPSE UNDER LOAD—ASSUMPTION OF RISK.

One who knows or has reason to believe that a bridge over a stream is liable to collapse under a heavy load, and nevertheless voluntarily and knowingly takes the risk of crossing the bridge with such a load, cannot recover against the town in which the bridge is located for injuries to the load, caused by the collapse of the bridge.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, § 92.]

2. SAME—KNOWLEDGE OF DEFECTS—EVIDENCE.

In an action against a town for damages sustained by the collapse of a bridge over which plaintiff's agent was driving with a heavy load, evidence *held* to show, in contradiction to the verdict, that plaintiff's agent knew, before crossing the bridge, that it was liable to collapse.

Appeal from Trial Term, Ulster County.

Action by Anna M. Johnson against the town of Denning. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Brinnier & Searing, for appellant.
John R. De Vany, for respondent.

HOUGHTON, J. The plaintiff's agent and husband was engaged in transporting a portable boiler and engine with sawmill attachments, over one of the bridges of the defendant town, when it collapsed, precipitating the engine and boiler to the bed of the stream, for the injuries to which plaintiff has recovered. The en-

gine, boiler, and team weighed slightly less than 8,000 pounds. The defendant does not claim the bridge was as safe as it reasonably should have been, but rests its defense upon the fact that the plaintiff's agent and servants knew of its unsafe condition, and voluntarily took the risk of crossing with the heavy load. Two other loads of considerable weight, connected with the mill, crossed first, and there is testimony that the bridge cracked with these loads and showed marked signs of unsoundness, and one of the drivers, having stopped when the cracking began, was warned to go ahead before the bridge broke under him. The plaintiff's agent testified that he examined the bridge as much as he could from its surface, without going underneath, and that it appeared to be safe, and denies the incident of the cracking when the first loads went over, or that he was warned as to its unsafe condition, or that he admitted after the accident that he had been told the bridge was unsafe, and crossed because it was a town bridge, and the business of the town to keep it in sound condition, as testified to by several witnesses. We think, however, that the testimony was so overwhelming that plaintiff's agent had been warned and knew of the unsafe condition of the bridge, and took his chances in safely crossing with the heavy load, that the court should have granted the defendant's motion for a new trial. Plaintiff's witness Ackerly says that Johnson, plaintiff's husband, was told in his presence by one Moe that the bridge was unsafe, unless he propped it up, to cross with his engine and boiler. Moe, called as a witness for the plaintiff, denies that he said this in the presence of Ackerly, but admits that he told Johnson that in his opinion, judging from the age of the bridge, it might not hold his load. Robinson, the driver of the team hauling the engine and boiler, says that Jerome Cross asked him how much his load weighed, and expressed doubt about the bridge standing the strain, and told him it might hold and it might not, which so disturbed him that he asked another party whom he met on the road about it, who said that the bridge was all right so far as he knew. In addition to the warning testified to by plaintiff's own witnesses, Ackerly and Moe, defendant's witnesses Porter and Krum say they warned Johnson not to cross without propping the bridge, because it was unsafe; and defendant's witnesses Dean, George Cross, Aldridge, Dulaff, and Krum all testify that Johnson admitted to them that he knew the bridge was unsafe, and that he intended to prop it up, but that Robinson, the driver, drove on against his orders before he had done so. The team hauling the boiler and engine was not owned by the plaintiff, but had been hired to do the hauling, and Robinson was the servant of its owner. While not strictly the servant of the plaintiff, yet Robinson was under the direction and control of plaintiff's agent. If plaintiff, through her agent, knew or had reason to believe that the bridge was liable to collapse under a heavy load, and voluntarily and knowingly took the risk of crossing, she cannot recover against the defendant town. Spencer v. Town of Sardinia, 42 App. Div. 472, 59 N. Y. Supp. 412. The evidence was so preponderating in.

favor of this situation that we think the judgment should be reversed and a new trial ordered.

Judgment reversed upon the facts, and a new trial ordered, with costs to the appellant to abide the event. All concur.