## Modern Woodmen of America v. Hurford.

(Decided October 11, 1921.)

### Appeal from McCracken Circuit Court.

1. Beneficial Associations—Contravening Statute.—A fraternal beneficiary society issuing certificates of life insurance can not make a bylaw enforcible in our courts which contravenes a public statute even though such bylaw be not immoral or criminal.

2. Beneficial Associations—Death—Presumption as to Death From Absence.—A bylaw of a fraternal society which provides that no lapse of time or absence or disappearance on the part of any member heretofore or hereafter admitted into the society without actual proof of death of such member, while in good standing in the society, shall entitle his beneficiary to recover the amount of his benefit certificate, is violative of section 1639, Ky. Statutes, which provides: "If any person who shall have resided in this state go from and do not return to this state for seven successive years, he shall be presumed to be dead, in any case wherein his death shall come in question, unless proof be made that he was alive at that time."

3. Contracts—To Forego Prosecution.—One is not bound by a contract whereby he agrees to forego the prosecution of a cause of action which may accrue to him in the future.

4. Insurance—Death—Manner of Proving.—The statute, sec. 1639, is a part of the public policy of the state and a bylaw of a society which undertakes to reject the fact so proven is contrary to public policy and unenforcible.

TRUMAN PLANTZ, BARBOUR & McDAVIS and W. V. EATON for appellant.

A. M. NICHOLS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The appellant, Modern Woodmen of America, is a fraternal beneficiary insurance society, organized under the laws of the state of Illinois, and having lodges and doing business in the state of Kentucky and elsewhere.

In April, 1911, Charles A. Hurford, of Paducah, Kentucky, became a member of the society and was issued a certificate of insurance for one thousand dollars ($1,000.00), his mother, Rosa A. Hurford, being named as beneficiary in the policy. In the following October young Hurford disappeared from Paducah. In April, 1912, an acquaintance met him in Moreley, Missouri,

when Hurford said "he was going down in the swamps to get some timber, him and some other fellows."

Since that time young Hurford has not been heard from or of by any of his family or any one so far as appears from this record. In August, 1919, appellee, Rosa A. Hurford, mother of Charles A. Hurford, and beneficiary in the certificate of insurance, instituted this action in the McCracken circuit court to recover on the policy, averring that her son, Charles A. Hurford, was dead; "that on or about the 14th day of October, 1911, said Charles A. Hurford left his home in Paducah, Kentucky, and has since said time been gone from the state of Kentucky for a period of more than seven successive years; that said Charles A. Hurford is a single man and resided with his mother, who is the plaintiff herein, and his home life was always pleasant and agreeable, and the cause of his absence is unknown to the plaintiff. She further states that the said Charles A. Hurford has not been heard of by her or any one else to her knowledge since the month of April, 1912. She states that said Charles A. Hurford was a resident of Paducah at the time he departed therefrom and had resided at said place all his life." A demurrer was interposed to the petition but while it was pending the plaintiff filed an amended petition in which she alleged that "Charles A. Hurford has not been heard from by any one since his departure from Kentucky as set out in the original petition, and he had at the time of the filing of the original petition been absent from Kentucky for more than seven (7) consecutive years, without ever being heard of or from by any one and has not to this day been heard of or from by any one."

The defendant by answer, after traversing the material averments of the petition as amended, sets forth two separate defenses.

(1). The said Charles A. Hurford is not dead and there is no evidence that he is not a resident at Moreley, Missouri, where he was last seen, and as he did not disappear from Kentucky the presumption of death by absence of seven (7) consecutive years as provided by section 1639, Kentucky Statutes, has no application to the case.

(2). The bylaws of the society, which are duly plead in the answer of the appellant, specifically provides in section 66 (now 78) thereof, "No lapse of time or absence

or disappearance on the part of any member, heretofore or hereafter admitted into the society, without proof of the actual death of such member, while in good standing in the society, shall entitle his beneficiary to recover the amount of his benefit certificate, except as hereinafter provided. The disappearance or long continued absence of any member unheard of shall not be regarded as evidence of death or give any right to recover on any benefit certificate heretofore or hereinafter issued by the society until the full term of the member's expectancy of life according to the National Fraternal Congress table of mortality has expired within the life of the benefit certificate in question, and this law shall be in full force and effect, statutes of any state or country or rule of common law of any state or country to the contrary notwithstanding. The term within the life of the benefit certificate as here used means that the benefit certificate has not lapsed or been forfeited, and that all payments required by the bylaws of the society have been made." A general demurrer was sustained to the answer with leave to amend. In due course the answer was amended to the satisfaction of the trial court. But little evidence was taken. The mother of the insured, the beneficiary in the certificate, testified that her son, who was then twenty (20) years of age and a member of the society, went away one day in October, 1911, to collect his week's wages due from a manufacturing concern for which he worked, saying that he would be back in a short while; that later in the same day he sent her seven dollars ($7.00) of his week's wages by a neighbor, who also carried her information that her son had said that he would be home in a short while to go with her down town; that she had never seen nor heard from him since that time. She testified, however, that an acquaintance had told her that he in April, 1912, had met her son in a small town in Missouri and that the son had told him, "that he was going down in the swamps to get some timber," and that he had never seen nor heard from her son since that time; that she had made inquiry of the police force in the city of Paducah, Kentucky, and of other cities in an effort to find her son but had been unable to hear of or from him. Later she applied to the officers of the appellant society for assistance in finding her son but the society was unable or unwilling to render her any assistance. A sister of the insured testified in substance the same as the mother concerning the disappearance of the insured and his absence

from home.    The only other witness called was Manley Hardeson, who testified that he had seen Charles A. Hurford, the insured, in Moreley, Missouri, in April, 1912; that he had a talk with him and young Hurford said ''he was going down in the swamps to get some timber—him and some other fellows.''    The witness was then asked by the court, ''That was the last time you ever saw or heard of him?''    Ans. ''Yes, sir.''

A jury trial was waived and the law and facts submitted to the judge who entered judgment in favor of appellee, Rosa A. Hurford, against the society, Modern Woodmen of America, for the sum of one thousand dollars ($1,000.00) on the certificate of insurance.    From this judgment the society appeals.

It urges but two grounds for reversal of the judgment; (a) section 1639 of the Kentucky Statutes has no application to the facts of this case, because the insured, Charles A. Hurford, had established a residence in the state of Missouri after his departure from Kentucky and if he disappeared as contended by the beneficiary he did so from the state of Missouri and not from the Commonwealth of Kentucky.    (b) The bylaws of the society in force at the time Charles A. Hurford became a member thereof, precluded him and his beneficiary from a recovery on the certificate of insurance in the absence of proof of actual death, except where the absence of the insured without intelligence continued for a period equal to his expectancy, during which time the premiums on his certificate had been paid in full.

It is hardly worth while in the light of the recent opinion of this court in the case of Prudential Insurance Company v. Gatz, 182 Kentucky 218, to devote much space to the consideration of the first objection made by appellant to the affirmation of the judgment, for in the Gatz case the facts were very similar to the ones here involved, and it was distinctly held that section 1639, Kentucky Statutes, does not repeal but is simply declaratory of the common law rule, that after an absence of seven (7) consecutive years, without intelligence concerning the appellee, a presumption is created sufficient to throw upon the other party the burden of proving the person to be alive, and although the insured in the Gatz case had, with his wife and children, departed from the state of Kentucky and taken up his residence in Indianapolis, Indiana, where he remained several months, conducting

a business and had while there suddenly and unexpectedly announced his intention of abandoning his home and family and did, in fact, abandon his home, family and place of business in the state of Indiana, from which place his wife and family soon returned to Kentucky and after a lapse of more than seven (7) years without intelligence from her husband, the wife being the beneficiary in the policy of insurance, instituted her action in the Jefferson circuit court of this state to recover on the policy of insurance and her claim was upheld by this court although the defense in that case, as in this, was largely rested upon the fact that the insured did not disappear from the state of Kentucky but from a foreign state in which he had acquired a residence. It must be admitted that section 1639 of our statutes concerning the presumption of death from absence is somewhat peculiar and hardly as comprehensive as the common law upon the subject. It applies to any and every person who shall have resided in this state and who has gone from and not returned to this state for seven (7) successive years. Its operation may be defeated by evidence that the one who so disappeared from the state was alive within the seven (7) years next before the question arose or the suit instituted. The rule applied in the Gatz case is conclusive of the question here and we must hold that an absence of seven (7) years of one who shall have resided in this state and has gone from and not returned to this state for seven (7) successive years, and who has not been heard of or from raises a presumption that such person is dead, which presumption can only be overcome by the introduction of proof to the contrary.

The second alleged error relied on by counsel for reversal of the judgment presents a very much more difficult question, the consideration of which we approach with great misgivings. It is conceded that the insured, Hurford, in his written application for membership in the society and for a benefit certificate agreed and obligated himself to abide by the constitution, bylaws, rules and usages of the order, then in force or thereafter adopted, in case he was admitted thereto and granted a benefit certificate. It is further granted that the bylaws in question which provide that "absence or disappearance on the part of any member, heretofore or hereafter admitted into the society, without proof of the actual death of such member, while in good standing in the society, shall not entitle his bene-

ficiary to recover the amount of his benefit certificate except as provided in the bylaws which allow such recovery only at the end of the insured's expectancy and then only provided all dues have been paid on the certificate and the insured is in good standing,'' was in force and effect long before and at the time insured made application for and was admitted to membership in the order.    It is the contention of appellee, Mrs. Hurford, that the bylaw under consideration is unenforcible because it contravenes a statute which is a part of the public policy of the state and for the additional reason that it is both unreasonable and unjust and well nigh impossible of performance on the part of the majority of beneficiaries claiming benefits under presumption of death by long continued absence.    She argues that as the expectancy of her son, the insured, at the time he disappeared from home in 1911 was more than forty-five years and as she was a woman of maturity her expectancy was much less than forty-five years and she will not in all probability live out the expectancy of her lost son and could not, therefore, reap the benefits of the certificate, the bylaw is absolutely unreasonable.    Moreover, in case of her death there would be no one to pay the dues or premiums as they fell due and the policy would, therefore, lapse.

Courts of last resort are not in harmony on the question of the right and power of a society to make such bylaws.    In the states of Illinois, Ohio, New York, Georgia, and perhaps other states, the courts have read the bylaw in question or a similar one, into the contract of insurance or benefit certificate and enforced it, the reason assigned being that a statutory or common law rule of presumption  as to death is merely a rule of evidence, a rule of procedure, and as no one has a vested right in such rule it may be changed at any time either by law or by contract between the parties without affecting injuriously the public policy of the state in which the contract is enforced.    There is much good reason as well as high authority for this position.    See L. R. A. 1915B, page 793 and 1917C, pages 1032-33.    See also Hartford Fire Insurance Co. v. R. R. Company, 175 U. S. 91, where a similar bylaw was held valid and declared reasonable. The rule that seven years of continued absence without tidings raises the presumption that the absentee is dead was a part of the common law of England at the time it was adopted by this Commonwealth.    Since then we have enacted a statute which reads:

"If any person, who shall have resided in this state, go from and do not return to this state for seven successive years, he shall be presumed to be dead, in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

It is, therefore, a part of our public policy and it is never allowable for individuals to contract in contravention of the state's expressed public policy. Fundamentally such a contract as is this benefit certificate when the challenged bylaw is read into it is unfair and unreasonable to the holder or beneficiary thereof. Although an insured meet with unexpected and untimely death and his body is lost, and his beneficiary, in ignorance of his death, keep up the payment of the dues for seven successive years, there can be no recovery on the contract if this bylaw be allowed to operate. Long experience has demonstrated that absence for a period of seven years without tidings but seldom happens, except where the absentee is dead. In discussing the right of this society to enforce the bylaws challenged in this case, the Iowa supreme court, in the case of Olsen v. Modern Woodmen of America, 164 N. W. 351, says:

"An insurmountable barrier is placed by this amendment in the way of a recovery, because the condition on which recovery rests (death) is incapable of proof under this amendment. Eliminating this seven-year rule, and destroying its efficacy as proof of death, the payment of the loss is postponed until twenty-six years after his disappearance, and the burden placed upon the assured of paying the premium during all these years to secure the benefits of the certificate. There is no presumption as to when he died, arising from the proof of absence. The law steps in at the end of seven years, proper proof attending his absence being disclosed, and says that he is now dead. His policy is mature. His beneficiary has a right to recover. Though this rule has its foundation in reason, and is founded upon a knowledge of the ways of men, yet the amendment says to the plaintiff, 'You cannot recover on such proof until twenty-six years have elapsed after the disappearance,' thus casting on plaintiff the burden of paying all dues and assessments during that time, and thereby making the certificate practically worthless. The rule of seven years' absence rests upon sound public policy. Those interested in the death are in no position to prove actual death. They must rest their case on the circumstances of absence, if they would

prove the death at all.   The fact that his whereabouts were unknown for seven years, the fact that by inquiry they could get no trace of him, the fact that they cannot prove that he is actually dead by eye-witnesses, or those who can swear positively to the fact of death, makes it impossible to prove the ultimate fact upon which liability rests, and postpones the payment nineteen years, though proof can be furnished and is offered which would satisfy any reasonable mind that the ultimate fact exists.   We think the rule is unreasonable, and ought not to be recognized and enforced by this court.''

As our statute, section 1639, expresses the public policy of this state and this bylaw proposes to make a different rule of evidence and to change the mode of proving death, it is contrary to our public policy and unenforcible. No member of society has the legal right to do that which has a tendency to be injurious to the public or against public good.   Such is public policy.   In the case of Ballard County Bank v. Guarantee Company (150 Ky. 236), we said:

''Public policy is usually understood to be 'the principles under which the freedom of contract and private dealing is restricted by law for the good of the community.'   Thus certain classes of acts are said to be 'against public policy,' and the law refuses to enforce or recognize them on the ground that they have a mischevious tendency, so as to be injurious to the interests of the state, apart from illegality or immorality.''

We have held various contracts contrary to public policy.   Statutes of limitation cannot be obviated by contract.   In the case of Union Central Life Insurance Company v. Spinks (119 Ky. 261), we said:  ''But statutes of limitation have come to be enacted everywhere.   They are not mere rules of evidence, presumptions of the payment or extinguishment of the obligation sued on, but are statutes expressive of a public policy, and are favorably regarded by law.   They are not in operation or suspension at the mere will of the parties but in spite of them. While the statutes themselves make motion for their suspension, it is to be noted that in any instance it is to be allowed for the purpose of continuing or prolonging a pre-existing right to sue and never to close the door against such suits by any kind of waiver in favor of the obligee.

''The public policy, as the term indicates, is impersonal, and essentially of universal and exclusive application

within the territory of the authority declaring it. There could be no public policy otherwise, and the whole people would be powerless to enforce any wholesome general rule of conduct in business transactions, where any number chose to ignore or violate it. Statutes of limitation belong to this class. They pertain to the administration of justice by the courts of the state—a subject of paramount concern to the whole public. That there may be a period of repose against stale claims is provided, recognizing the old idea that, but for the loss of evidence, death or removal of witnesses, forgetfulness, and so on, an apparent condition might have been explained away. That statute means more than that no suit shall be maintained upon the class of claims treated of by it after the lapse of the time fixed by it. It means, also, that until that time has elapsed the courts are open to hear the claim. The statutes are substituted in lieu of the common law rules of presumptions and practice, and establish the public policy of the state on the subject of limitation of actions. They supersede not only the fictions of the common law, but also supersede the hitherto uncontrolled capacity of parties to themselves limit the time in which either may rightfully appeal to the courts for redress under their contracts. Agreements in advance to waive statutes of limitation altogether are held void on the grounds that such statutes are for the repose, the peace and the welfare of society." 119 Ky. 268-9.

What is said regarding statutes of limitations is with more reason true of a statute fixing a time when from absence, one who has not been heard of or from shall be deemed dead.

The obnoxious bylaw was by its terms passed by the society with the expressed purpose of avoiding statutes fixing the time in which persons who have been absent from home and friends and not heard of or from shall be presumed dead. Such a bylaw cannot be upheld, for, as said in the Spinks case, *supra,* "whatever tends to injustice or oppression, restraint of liberty, restraint of legal rights; whatever tends to the obstruction of justice, a violation of the statutes or the obstruction or perversion of the administration of the law; whatever tends to interfere with or control the administration of the law as to executive, legislative or other official actions whenever embodied in and made subject of a contract, the contract is against public policy and, therefore, void, and not susceptible of enforcement."

Although one may agree to be bound by a bylaw then in force which is contrary to the well-being of society and calculated to subject him to oppression or loss, he is not bound thereby, especially where such a bylaw is flagrantly against the statutory law of the Commonwealth. He can be bound to the performance of that part of the contract only which the law recognizes as valid, leaving that which transcends public policy as no part of the contract and unenforcible.

Having reached the conclusion that the challenged bylaw was and is unenforcible, and the finding of fact by the trial judge that Charles A. Hurford was dead before the commencement of this action, is sustained by sufficient evidence, we must hold the beneficiary, Mrs. Rosa A. Hurford, is entitled to recovery on the benefit certificate and the judgment must be and is affirmed.

Whole court sitting.