FLORENCE MAYS *v.* SOVEREIGN CAMP, W. O. W.*

MRS. LESLIE HENRIETTA THOMAS *v.* SAME.

(*Nashville.* December Term, 1924.)

1. INSURANCE. ''Actual death'' of insured held to mean physical death as distinguished from presumptive death.

Under benefit certificate providing that disappearance is not to be regarded as evidence of death, or give right to recover, in absence of proof of "actual death," aside from presumption arising by reason of absence, until full term of life expectancy of insured had expired, *held* that the words "actual death" referred to his physical as distinguished from his presumptive death. (*Post, pp.* 607-609.)

Cases cited and approved: Gaffney v. Royal Neighbors, 31 Idaho, 549; Marquet v. Insurance Co., 128 Tenn., 226; Modern Woodmen v. Hurford, 193 Ky., 50; Cobble v. Royal Neighbors of America, 291 Mo., 125; McCormick v. W. O. W., 57 Cal. App., 568; W. O. W. v. Piper, 222 S. W., 649; National Union v. Sawyer, 42 App. Div., 475; M. W. A. v. White, 70 Colo., 207; Haines v. Modern Woodmen, 189 Iowa, 651; Hannon v. Grand Lodge, 99 Kan., 734; Samberg v. Knights of Modern Maccabees, 158 Mich., 568; Boynton v. M. W. A., 148 Minn., 150; Garrison v. Modern Woodmen, 105 Neb., 25; Roblin v. Supreme Tent, 269 Pa., 139; W. O. W. v. Robinson, 187 S. W., 215; Sweet v. Modern Woodmen, 169 Wis., 462.

Cases cited and distinguished: Wallace v. McPherson, 138 Tenn., 463; Hartford F. Ins. Co. v. Chicago, M. & St. P. R. Co., 175 U. S., 91.

2. INSURANCE. By-laws of benefit association forming part of policy are enforceable and binding, if reasonable.

By-laws of fraternal insurance companies which form a part of policy are enforceable against one *sui juris* who accepts them and agrees to abide by them, if reasonable. (*Post, pp.* 609-620.)

*On validity of by-law of mutual association preventing recovery upon presumption of death from seven years absence, see note in 17 A. L. R. 418; 21 A. L. R. 1346.

Mays v. Sovereign Camp, W. O. W.

Cases cited and approved: Guthrie v. Indemnity Association, 101 Tenn., 643; Whiting v. Nicholl, 46 Ill., 230; Donovan v. Major, 253 Ill., 179; Stevenson v. Montgomery, 263 Ill., 93; Roeh v. Business Men's Protective Assn., 164 Iowa, 199; Lundberg v. Interstate Business Men's Acc. Assn., 162 Wis., 474; Cobble v. Royal Neighbors, — Mo. App.,—; Chicago, B. & Q. R. Co. v. Jones, 149 Ill., 361; People ex rel. Hillel Lodge, I. O. B. B. v. Rose, 207 Ill., 352; Chicago Terminal Transfer R. Co. v. Chicago, 217 Ill., 343; Tisch v. Home Circle, 74 N. E., 188; Modern Woodmen v. Angle, 127 Mo. App., 94; Metropolitan v. Willis, 37 Ind. App., 48; Tompkins v. Pacific, 53 W. Va., 479; Dick v. Supreme Body, etc., 138 Mich., 372.

Cases cited and distinguished: Steen v. M. W. A., 296 Ill., 104; Kelly v. Supreme Council, 46 App. Div., 79; McGovern v. Brotherhood of Locomotive Firemen, 31 Ohio Cir. Ct. R., 243; Porter v. Home Friendly Society, 114 Ga., 937; Becker v. Interstate Business Men's Acc. Ass'n. of Des Moines, Iowa, 265 F., 508; Fleming v. Merchants' Life Ins. Co., 180 N. W., 202.

3. INSURANCE. Provision denying recovery on disappearance of insured in absence of proof of actual death until expiration of life expectancy not against public policy.

A provision in a benefit certificate that disappearance of insured shall not be regarded as evidence of his death or give right to recover any benefits in absence of proof of actual death, aside from presumption arising by reason of such absence, until full term of insured's life expectancy has expired, is not void as against public policy. (*Post, pp.* 620, 621.)

*Headnotes 1. Mutual Benefit Insurance, 29 Cyc., p. 138; 2. Mutual Benefit Insurance, 29 Cyc., p. 69; 3. Mutual Benefit Insurance, 29 Cyc., p. 235.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— Hon. F. H. Heiskell, Chancellor.

FRANK S. ELGIN, WILSON, GATES & ARMSTRONG and ROBERT B. GOODWIN, for Mays and Thomas.

R. A. MATTHEWS and A. J. CALHOUN, for appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

These causes were heard together and involve the same questions, to-wit, the construction and validity of the following provision contained in the benefit certificates sued on herein:

"The absence or disappearance of the member herein named, whether admitted heretofore or hereafter from his last known place of residence and unheard of, shall not be regarded as any evidence of the death of such member, or give or create any right to recover any benefits on any certificate or certificates issued to such member or on account of such membership, and the absence of proof of his actual death aside from and unassisted by any presumption arising by reason of such absence or disappearance until the full term of his life expectancy at his age of entry, according to the Carlisle table of life expectancy, has expired and then only in case all assessments, dues, special assessments and all other sums now or hereafter required under the laws of the order be paid on behalf of such member within the time required until the expiration of the term of such life expectancy, and the conditions of this certificate shall operate and be construed as a waiver of any statute of any State or country and of any rule of the common law of any State or country to the contrary; in the event pay-

ments are not made as above provided, said member shall stand suspended and cannot be reinstated except in the manner as provided in the constitution and laws as to reinstatement of living member."

We are clearly of the opinion that the parties intended that the words "actual death" of the insured refer to his physical death as distinguished from his presumptive death. Otherwise this provision of the policy would be idle and useless.

Counsel for complainants have cited one case (*Gaffney v. Royal Neighbors*, 31 Idaho, 549, 174 P., 1014) that does support their contention; but in a number of the cases hereinafter cited a contrary view is expressed, and it may be said that the authorities generally treat the words "actual death" as in conflict with or antagonistic to the seven-year rule of presumption.

It is next insisted that this provision is against the public policy of the State, and therefore invalid.

In *Wallace* v. *McPherson*, 138 Tenn., 463, 197 S. W., 566, L. R. A., 1918A, 1148, this court said:

"Any person *sui juris* may make any contract with another which is not in violation of the federal or State Constitutions, federal or State statutes, some ordinance of a city or town, or some rule of the common law. There is no provision or rule of either that forbids such a contract or condition, unless the condition fall within that department of the common law which relates to contracts against public policy. Subtracting from the latter term all that concerns obligations contrary to constitutions, statutes, and municipal ordinances, and all known rules of the common law other than those applicable to public policy in its more general aspects, there remains only

such matters as are contrary to the public morals, the public health, the public safety, or that can be reasonably held from any point of view as inimical to the public welfare.''

In *Hartford F. Ins. Co.* v. *Chicago, M. & St. P. R. Co.*, 175 U. S., 91, 20 S. Ct., 33, 44 L. Ed., 84, the court said:

''The power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.''

The only theory upon which it is argued that any agreement changing the common-law rule of presumed death, where a party has been absent seven years, is that this rule obtains in this State (*Marquet* v. *Insurance Co.*, 128 Tenn., 226, 159 S. W., 733, L. R. A., 1915B, 749, Ann. Cas., 1915B, 677), and has therefore become the public policy of the State and any contract undertaking to change same is invalid.

There are three classes of decisions dealing with this question.

In the first class it is generally held that where the presumption of death from seven years' absence unheard of finds expression in statutory enactment, such enactment becomes the public policy of the State, and any contract contravening such policy will not be enforced. *Modern Woodmen* v. *Hurford,* 193 Ky., 50, 235 S. W., 24, 21 A. L. R., 1340; *Cobble* v. *Royal Neighbors of America,* 291 Mo., 125, 236 S. W., 306, 21 A. L. R., 1346; *McCormick* v. *Woodmen of the World,* 57 Cal. App., 568, 207 P., 943; *Woodmen of the World* v. *Piper* (Tex. Civ.

App.); 222 S. W., 649; *National Union* v. *Sawyer*, 42 App. Div., 475.

We have no such statute in this state.

In the second class, by the weight of authority, by laws doing away with the presumption of death from seven years' absence, passed after the insured had entered into the contract of insurance, although he undertook to be bound by subsequent laws, have been held invalid on the ground that they are unreasonable. *Modern Woodmen of America* v. *White*, 70 Colo., 207, 199 P., 965, 17 A. L. R., 393; *Haines* v. *Modern Woodmen*, 189 Iowa, 651, 178 N. W., 1010; *Hannon* v. *Grand Lodge*, 99 Kan., 734, 163 P., 169, L. R. A., 1917C, 1029; *Samberg* v. *Knights of Modern Maccabees*, 158 Mich., 568, 123 N. W., 25, 133 Am. St. Rep., 396; *Boynton* v. *Modern Woodmen of America*, 148 Minn., 150, 17 A. L. R., 401, 181 N. W., 327; *Garrison* v. *Modern Woodmen*, 105 Neb. 25, 178 N. W., 842; *Roblin* v. *Supreme Tent*, 269 Pa., 139, 112 A., 70; *Sovereign Camp, W. O. W.* v. *Robinson* (Tex. Civ. App.), 187 S. W., 215; *Sweet* v. *Modern Woodmen*, 169 Wis., 462, 172 N. W., 143.

There is practically no conflict in the authorities to the effect that by-laws of fraternal insurance companies, which form a part of the policy, are enforceable against one *sui juris* who accepts them and agrees to abide by them, provided they are reasonable.

In the third class it is held that the common-law rule invoked is one of evidence only, and that parties have a right, by contract, to change the rule, and by so doing they do not contravene the public policy of the State. *Steen* v. *Modern Woodmen of America*, 296 Ill., 104, 129 N. E., 546, 17 A. L. R., 406; *Kelly* v. *Supreme Council*, 46

151 Tenn.—39.

App. Div., 79, 61 N. Y. S., 394; *McGovern* v. *Brotherhood of Locomotive Firemen,* 31 Ohio Cir. Ct. R., 243, which decision was affirmed by the supreme court of Ohio in a memorandum opinion, 85 Ohio St., 460, 98 N. E., 1128; *Porter* v. *Home Friendly Society,* 114 Ga., 937, 41 S. E., 45; *Becker* v. *Interstate Business Men's Acc. Ass'n of Des Moines, Iowa* (C. C. A.), 265 F., 508; *Modern Woodmen* v. *Hurford,* supra; *Hartford F. Ins. Co.* v. *Chicago, M. & St. P. R. Co.,* supra.

As opposed to the decision of the third class, counsel have found only one case squarely in point. *Gaffney* v. *Royal Neighbors,* supra.

In the case of *Fleming* v. *Merchants' Life Ins. Co.* (Iowa), 180 N. W., 202, the court held the following by-law, enacted prior to the issuance of the policy sued upon, invalid, to wit:

"Disappearance or long-continued absence of the member, unheard of, shall not be regarded as evidence of death, or of any right to recover."

The court, in its opinion, said: "In some of the cases the contract provides substantially that evidence of absence may not be considered to prove death until the expiration of the life expectancy of insured. In the instant case there is no time limit whatever. The plaintiff could continue to pay assessments, with the knowledge of the company, for one hundred years, or indefinitely, and yet, in the language of the by-law and contract, such long-continued absence of the member, unheard of, shall not be regarded as evidence of death, or, still, in the language used, 'of any right to recover.' . . .

"We think the contract is in violation of the spirit of our insurance laws. The effect is to protect the insurer against an occasional fraudulent disappearance, and operates to defeat recovery by the beneficiary of the insured who has met death away from him or under circumstances to render identification of his body or proof of his death impossible. It not only protects the company against fraud but it as well defeats the beneficiary in some cases who is entitled to the benefits of the contract.

"Some members of the court think that the contract is unreasonable and against public policy for this reason, and that this is the better ground upon which to base the invalidity of the provision in question. Others of the court, including the writer, are of opinion that the stronger and better ground is that it unduly limits and deprives the court of the exercise of its functions to hear any evidence upon the only issue that could be in the case."

The court seemed to recognize a distinction between a by-law which limited the time in which death could be established by presumption and one in which there is no time limit whatever. The idea being that in one case the court is not completely ousted of jurisdiction, while in the other it is.

It appears that some members of the court based their decision upon the fact that the contract violated the spirit of the insurance laws of that State.

One member of the court dissented from the majority opinion.

That case is not a direct authority for complainants.

In our opinion, under the facts of these causes, the principle announced in the decisions of the third class is applicable.

This cause can be assimilated to that of our statute of limitations, which provides that actions on debt shall be commenced within six years, but this court has held that, by contract, the parties can limit the time to one year. *Guthrie* v. *Indemnity Association*, 101 Tenn., 643, 49 S. W., 829.

In the cases from which we shall quote, the by-laws involved were substantially the same as the provisions in the policies in question.

In *Steen* v. *Modern Woodmen of America*, supra, the court said:

"We think it clear, from a consideration of the by-law and the apparent purpose for which it was passed, that the age fixed at which the expectancy of life is to begin to run is the time of disappearance. The object of the by-law is to establish a rule of evidence in disappearance cases different from the seven years' absence rule established by the common law. The rule of evidence sought to be established is that, when a member disappears and nothing is heard from him, he is presumed to live out his natural expectancy, and at the end of his natural expectancy he will be presumed to be dead, but not until that time has arrived. This natural expectancy is to be determined according to the National Fraternal Congress Table of Mortality, a table recognized by the insurance departments and the courts of practically every State in the Union. . . .

"At the time this benefit certificate was issued there was a well-established rule of evidence in this State that

the unexplained absence of a person from home, without having been heard from for seven years by those who would naturally have heard from him if he had been alive, although diligent efforts were made to find him, raised a presumption of death, unless the circumstances of the case were such as to account for his not being heard of, without assuming his death. *Whiting* v. *Nicholl,* 46 Ill. 230, 92 Am. Dec., 248; *Donovan* v. *Major,* 253 Ill., 179, 97 N. E., 231. This is an arbitrary presumption, rendered necessary on grounds of public policy, in order that rights depending upon life or death of persons long absent and unheard of may be settled by some certain rule. Jones, in volume 1 of his Commentaries on Evidence, section 61, says: 'Thayer, in his usual thorough way gives an interesting and instructive account of the presumption, and fixes its application in its present form as of 1805, and that it appeared for the first time in the text-books of 1815 and was speedily followed by other eminent writers, ending in 1876 with Stephen. ''Here, then,'' says Thayer, ''in seventy years we find the rule about a seven years' absence (1) coming into existence in the form of a judicial declaration about what may or may not fairly be inferred by a jury in the exercise of their logical faculty, the particular period being fixed by reference to two legislative determinations, in specific cases of a like question; (2) passing into the form of an affirmative rule of law requiring that death be assumed under the given circumstances. This is a process of judicial legislation, advancing what is a mere recognition of a legitimate step in legal reasoning to a declaration of the legal effect of certain facts.'' '

"This legal presumption of death from seven years' unexplained absence arose by analogy under two early English statutes, the one exempting from the penalty of bigamy any person whose husband or wife should be continuously beyond the seas, or should absent himself or herself for the space of seven years together, and the other providing that persons in leases for lives, who shall remain beyond the seas or absent themselves from the realm for more than seven years, shall, in the absence of proof to the contrary, be deemed naturally dead. That the rule in question is merely a rule of evidence is unquestioned. *Stevenson* v. *Montgomery*, 263 Ill., 93, 104 N. E., 1075, Ann. Cas., 1915C, 112. It is so treated by all the text-book writers. It was a rule born of necessity, to prevent the prosecution for bigamy of a deserted spouse, on the one hand, and to settle the property affairs of the absentee, on the other hand. It grew up in England at a time when travel was fraught with every danger known to man, and when means of communication were primitive. Since this rule of law was established, the social aspects of our civilization have been almost revolutionized. The improbability that accident, injury, sickness, or death could overtake a member of this society, without information of the fact reaching his family and friends, is very great. In case of need he scarcely could fail to find assistance among the million members of his own fraternity. Hospital, police, burial, and other records are collected and preserved in practically every State in this country, and newspapers are published in every city and village, and, except for the reasons for which the law was originally established, there is now no sound reason for continuing the rule, except that it

has existed for so long a time that convenience makes it the best rule to follow, where no other rule is established by statute or by agreement.

"The contract in question here is insurance on life, and the one essential fact necessary to mature this contract is the death of the insured. The burden is on the beneficiary to prove this death. The rule of law which appellant invokes is a rule of evidence, and relates to the manner and *quantum* of proof necessary to establish death. By the common-law rule, a finding of the death of the insured will be sustained on proof of seven years' continued absence without intelligence of such absent person. Under the by-law in question such proof is not sufficient, unless the absence has continued for a period equal to the member's expectancy of life. There is no vested right in a rule of evidence, and parties may, by contract, change an established rule of evidence, and provide that a different rule shall apply in determining controversies that may arise between the parties to the contract. *Roeh* v. *Business Men's Protective Asso.*, 164 Iowa, 199, 51 L. R. A. (N. S.), 221, 145 N. W., 479, Ann. Cas., 1915C, 813; *Lundberg* v. *Interstate Business Men's Acci. Asso.*, 162 Wis., 474, 156 N. W., 482, Ann. Cas., 1916D, 667; *Cobble* v. *Royal Neighbors*, — Mo. App., —, 219 S. W., 118. In *Chicago, B. & Q. R. Co.* v. *Jones,* 149 Ill., 361, 24 L. R. A., 141, 41 Am. St. Rep., 278, 4 Inters. Com. Rep., 683, 37 N. E., 247, we said: 'No man or corporation has a vested right in the rules of evidence. They pertain to the remedies provided by the State for its citizens, and do not constitute a part of any contract.'

"To the same effect is our holding in *People ex rel. Hillel Lodge, I. O. B. B.* v. *Rose,* 207 Ill., 352, 69 N. E.,

762, and in *Chicago Terminal Transfer R. Co.* v. *Chicago,*
217 Ill., 343, 75 N. E., 499.

''The average duration of human life after any given
age being now ascertained and stated in well-authenti-
cated tables, which have been recognized by the courts
as safe rules in the calculation of the value of annuities
and in other similar cases, no good reason is perceived
why the same tables may not be accepted as furnishing
ground legally to presume the death of a person, after
the lapse of the period of probable duration of his life,
in the absence of any evidence to the contrary. These
tables are scientifically made from actual experience in
dealing with a given number of human lives at a given
age. As we have said, the presumption of death on ac-
count of seven years' unexplained absence is an arbi-
trary rule, established by necessity, and has no basis in
fact or in experience. The purpose of the by-law under
consideration is not to do away with presumption of
death on account of the disappearance and continued ab-
sence, but is to substitute certainty for uncertainty, to
displace guesswork by science, and to supplant ground-
less conjecture by actual experience.''

In *Kelly* v. *Supreme Council,* supra, the court said:
''The foregoing facts being admitted—as they must be
for the purpose of considering the demurrer—it does not
require argument to demonstrate that the defense is not
demurrable. It is based upon the constitution, by-laws,
rules, and regulations of the defendant, to which the
plaintiff's husband assented, and as such it cannot be
overthrown by demurrer, unless, as plaintiff contends,
it is, in and of itself, illegal, inconsistent with the pur-
pose for which the certificate was issued, repugnant to

law, or against public policy, and therefore void. It cannot be said to be invalid for any of these reasons. Plaintiff's husband and the defendant had a legal right to agree as to the proof which should be furnished concerning his death before a liability to pay should arise. The presumption that death has occurred after a continued absence, unheard from, for a period of seven years, is a rule of evidence. This presumption the parties have a perfect right to agree shall not apply, and that such absence shall not be evidence of death. The word 'actual,' used in the certificate, has a definite and well-understood meaning. It is something real, in opposition to constructive or speculative; something existing in fact. By its use the defendant manifestly intended to and did provide against liability in a case of speculative or presumptive death; in other words, it sought to provide against liability in just such a case as this. The parties, as we have seen, had a legal right to enter into an agreement of this character, and it cannot be said to be 'illegal, unreasonable, inconsistent with the object and purpose of the certificate, or repugnant to law, public policy, or good morals.' ''

In the case of *McGovern* v. *Brotherhood of Locomotive Firemen,* supra, the court said: ''The reasonableness of such by-laws as the one pleaded in this case is recognized in *Tisch* v. *Home Circle* [reported in 74 N. E., 188], and cases there cited, but it is urged that this by-law, not only limits the right to recover under the certificate, but seeks to control the rules of evidence which shall be applied by the courts; that it attempts to abrogate the rule of the courts that proof of seven years' absence, unheard of, shall be received as proof of death.

The point would be well taken were the defendant an insurance company where the relation of company and policy holder is antagonistic, but it has been repeatedly held that the mutual interests of the members of a fraternal beneficiary association warrant their regulating their own affairs to the entire exclusion of the courts. An agreement, such as we have here, that no death losses shall be paid when the only evidence of death is that the member has disappeared, is for the mutual benefit of all the members, and it is not contrary to public policy for parties to agree among themselves for their mutual benefit. McGovern had the benefit of this agreement, . . . and his beneficiary must share its burdens.''

In *Porter* v. *Home Friendly Society,* supra, the court said: ''In our opinion, there was no error in sustaining the demurrer and dismissing the petition. In the face of the express stipulation in the policy that 'the disappearance or long-continued absence of the [assured] shall not be regarded as evidence of death or any right to recover till the full term of expectation has expired,' the plaintiff, without alleging that such 'term of expectation' had expired, could not rely upon the alleged fact, that more than seven years before the suit was brought the assured had disappeared and had not since been seen or heard of, as evidence of his death.''

In *Becker* v. *Interstate Business Men's Acci. Ass'n,* supra, the policy contained the two following provisions:

''4a. The association shall not be liable for the payment of any sum whatsoever, if such injury be sustained at a time when the member is (1) insane; (2) not in the full possession and normal exercise of all his facul-

ties; (3) engaging in any act in violation of any law or ordinance; (4) or if the injury be produced by the intentional act of a person whether sane or insane. . . .

"5a. There shall be no liability on the part of the association for the payment of any sum on account cf a bodily injury produced by (1) the discharge of firearms; (2) poison; (3) or where the body is not recovered and fully identified, unless the claimant shall establish the accidental character of the injury by a person other than the member or the claimant, who was an eyewitness of all the circumstances of the casualty."

The circuit court of appeals said: "A contract to pay the amount of the policy only in case an injury or a death is proved in a certain and described manner is treated as though it were a contract to pay for such injury or death if it is proved in any manner. We see no reason why parties may not contract, if they so desire, that the insurance shall be paid only for an injury that is established by the testimony of one or more eyewitnesses who have no interest in its payment.

"Some of the conclusions to the contrary in the cases referred to do not impress us as sound. It is difficult to understand why, for example, the parties may not lawfully contract for insurance payable for a death other than one presumed from unexplained and long absence, or for a death which occurs in the presence of eyewitnesses or where the body is found. It is much more difficult to understand why, if the contract makes the insurance payable for a death, but provides that unexplained long absence shall not be evidence of death, or makes the insurance payable for accidental death, but provides that the mere fact of death shall not be evidence

of accident, or makes the insurance payable for death, but provides that there must be evidence of it by an eyewitness, or makes the insurance payable for death, but provides that there must be proof that the body was found, such contracts are any different in legal effect. Such contracts do not attempt to limit the courts in the construction of their terms, or as to what is competent proof of a relevant fact, but do limit the risks to which the contracts apply. The right to limit the risks insured against is essential both to the right of freedom of contract and to the successful conduct of the business of insurance. The general purpose and effect of such condition is to discourage self-inflicted injuries and suicide by the insured.''

In some of the states, by statutes, communications between physician and patient are privileged, but a number of cases hold that such privilege can be waived by the patient. *Modern Woodmen* v. *Angle,* 127 Mo. App., 94, 104 S. W., 297; *Metropolitan* v. *Willis,* 37 Ind. App. 48, 76 N. E., 560; *Tompkins* v. *Pacific,* 53 W. Va., 479, 44 S. E., 439, 62 L. R. A., 489, 97 Am. St. Rep., 1006; *Dick* v. *Supreme Body, etc.,* 138 Mich., 372, 101 N. W., 564.

An insurance company has a right to contract as to the nature and extent of the risk assumed, and we see no good reason why a benefit society, operated in the interest of its members and not for profit, cannot by contract limit its liability to actual or physical death, or presumptive death after the period of life expectancy of the insured has expired. In other words, we see no reason why it cannot exclude, by contract, liability for a presumptive death; and no valid reason occurs to us as to

why such a contract in any sense offends the public policy of the State.

Instances of disappearance are increasing, which, it has been suggested, is due to flight from justice, dissatisfaction with family ties, or for the purpose of avoiding domestic responsibility and obligation. And, as herein above suggested, this character of risk is uncertain and speculative.

In the Mays Case the bill concluded with the statement that the insured was dead; but it is evident to our mind that this was a conclusion based upon the preceding allegations that the insured had been absent from his home for more than seven years, and that, after diligent inquiry, his relatives were unable to locate him.

The policies sued upon were exhibited with the respective bills. The bills were demurred to upon the ground that they stated no valid causes of action, and the demurrers were sustained.

In this we think the chancellor was correct, and his decree will be affirmed, with costs.