DANIEL H. PARKS

*v.*

SUPREME CIRCLE, BROTHERHOOD OF AMERICA, et al.

[Submitted February 20th, 1914.  Determined March 13th, 1914.]

1. The contract between a mutual benefit association and its members is contained in the fundamental laws of the association, and a power of amendment contained in the charter or by-laws in general terms only contemplates reasonable amendments adopted in furtherance of the contract, and not such as would materially alter its terms.

2. When complainant joined a fraternal benefit society, the by-laws provided for a fund from which payments were made to each beneficiary, which fund was created by monthly payments of dues, five per cent. of which was set apart for a reserve fund, and the balance held to meet current monthly death benefits. The reserve fund, like the monthly balance from dues, could only be used to pay death benefits. In 1912 the by-laws were amended by creating two divisions of the membership, division No. 1 including members admitted after March 1st, 1910, when an amendment was adopted graduating dues according to the age, and members admitted prior to that time who elected to become members of that division, while division No. 2 included all members admitted before March 1st, 1910, who declined to become members of division No. 1. The dues of division No. 1 were graduated, while the dues in division No. 2 remained the same as originally. By the amendment the funds were to be divided between the two divisions "in proportion to the duration of membership," the aggregate years of membership of all members in each division determining its percentage of the fund, and, after such division, each fund was exempted from liability for losses in the other division, and all new members were required to join division No. 1. Enforcement of the amendment was enjoined as against old members, and in 1913 another amendment was adopted providing that the reserve fund should be equitably divided by apportioning it among the whole membership in proportion to their life expectancies, and that the respective parts should remain a separate trust fund for the losses arising in the respective divisions, and the fund of one division should not be liable for losses arising in the other.—*Held*, that the amendments of 1912 and 1913 violated the contract rights of a member who had joined before March 1st, 1910, so that he could enjoin their enforcement.

On final hearing on bill for injunction.

Defendant is a fraternal and beneficial society incorporated under an act entitled "An act to incorporate benevolent and charitable associations," Revision, approved April 9th, 1875. At the time complainant became a member the by-laws of the society provided for a fund from which payments of $500 should be made to the beneficiary of each deceased member who should be found to be entitled to death benefits at his decease. This fund was to be created and sustained by the monthly payment of dues by each member. Five per cent. of these monthly dues were to be set apart for a "reserve fund," and the balance, after deducting a certain percentage for expenses, was to be held to meet current monthly · death benefits. The reserve fund, like the monthly balance from dues, could only be used for the payment of death benefits.

The dues were fixed by the by-laws at fifty cents per month for each member irrespective of 'the age of the member or length of his membership, but could be increased to sixty cents per month under certain specified contingencies.

March 1st, 1910, a new by-law abolished the flat rate of monthly dues and adopted a schedule of rates which graduated all dues according to the ages of the members. In practical operation that new by-law required older members to pay more than sixty cents per month as dues. On a bill filed by a member this court enjoined the enforcement of the new by-law as violative of the rights of members who had contracted insurance at the old rate. *Poole* v. *Supreme Circle* (*N. J. Ch.*), *85 Atl. Rep. 821.* That decree was subsequently affirmed by our court of errors and appeals. *80 N. J. Eq. 259.*

July 31st, 1912, the by-laws were further amended by the creation of two independent divisions—one division, numbered 1, to comprise members who were admitted on and after March 1st, 1910 (the date the former amendment had been adopted), and such members who had been admitted prior to that time and should elect to become members of that division; the other division, numbered 2, to comprise all other members—that is, all members who had been admitted prior to March 1st, 1910, and who declined to become members of division 1. The dues of members of division 1 were graduated as in the former amendment; in division 2 the dues were unchanged. The moneys from which death benefits were payable—that is, the moneys in the reserve fund and the unexpended death benefit balances which had not been transferred to the reserve fund, were to be divided between the two divisions "in proportion to the duration of membership"—that is, the aggregate years of membership of all members in each division determined its percentage of the fund, each fund, after division, was exempted from liability for losses arising in the other division; all new members were required to join division 1.

A bill was then filed in this court by the present complainant to enjoin the enforcement of these by-law amendments of July 31st, 1912. It was in that suit determined that the new by-laws could not be lawfully enforced against the will of complainant.

The ground of that decision was that contractual rights of dissenting members who had joined prior to March 1st, 1910, were invaded by allowing other members who had joined prior to that date to transfer their membership to another wholly independent division and withdraw from the funds from which losses were payable a percentage of such funds based upon years of membership. A doubt was also there suggested whether any withdrawal privilege could be lawfully adopted which should be operative to remove any part of such funds from liability for death claims of remaining members. *Park v. Supreme Circle, 81 N. J. Eq. 330.*

Thereafter, May 15th, 1913, a further amendment of the by-laws was adopted by which the provision for an apportionment of the funds between the two divisions "in proportion to the duration of membership" was changed to "in proportion to their life expectancy," and the exemption of funds of each division from liability for losses in the other division was readopted.

This new amendment is as follows:

"That the Reserve Fund held by the Supreme Circle shall be equitably divided by apportioning it among the whole membership in proportion to their life expectancy, and that portion set apart for members of Division 1, together with the accumulations that may come to it under these laws, shall be and remain a trust fund separate and distinct for losses arising in Division 1; and that portion set apart for members of Division 2, together with the accumulations that may come to it under these laws, shall be and remain a trust fund separate and distinct for losses arising under Division 2; and under no circumstances or at no time shall the trust fund of one division be liable for or be taken to pay losses arising under the other division."

It is the validity of these amendments of July 31st, 1912, as modified by this amendment of May 15th, 1913, that the present bill challenges.

*Mr. Oscar B. Redrow,* for the complainant.

*Mr. John F. Harned,* for the defendant.

LEAMING, V. C.

The contract between complainant and defendant society is not embodied in a formal written contract similar to a policy of

insurance. The contract is to be found in the fundamental laws of the society; and a power of amendment contained in the Charter act or by-law of the society in general terms is to be understood as referring only to reasonable amendments adopted in furtherance of the contract, and not to such as would overthrow it or materially alter its terms. *O'Neill* v. *Supreme Council, 70 N. J. Law 410, 420; Sautter* v. *Supreme Conclave, 72 N. J. Law 325; Poole* v. *Supreme Circle (N. J. Ch.), 85 Atl. Rep. 821; S. C. on appeal, 80 N. J. Eq. 259.*

An examination of the charter and the by-laws of defendant corporation which existed at the time complainant became a member discloses the contract between the corporation and complainant to have been an engagement on complainant's part, in common with all other members, to pay dues of fifty cents monthly and under certain contingencies to pay sixty cents monthly, and in consideration of these payments defendant corporation engaged to apply the dues so received in a manner specifically stated in the by-laws, to the end that a fund should be created from which $500 should be paid to the beneficiary of each member at his decease. The application of the dues, as specified in the by-laws, was to be as follows: Five per cent. of the monthly receipts was to be carried to a reserve fund from which no appropriations could be made except for the payments of death benefits; the remainder of the monthly dues were to meet, so far as sufficient in amount, current monthly obligations maturing through deaths of members, except that on the first day of January of each year an amount equal to five cents per capita for each member on that day was to be deducted from the dues and paid to the general fund to meet current running expenses. The foregoing comprises the essential features of the by-laws which defined the mutual engagements between the members and the corporation prior to March 1st, 1910; the remaining by-laws deal with administrative matters incidental to the consummation of the defined scheme. The effect of the amendments to the by-laws which are now called in question is: 1. To leave all members who joined prior to March 1st, 1910, in a class or division by themselves and to permit them to continue to pay dues at the old flat rate and receive death benefits in the amount

originally fixed.    2. To prohibit accession of membership to that division after March 1st, 1910.    3. To permit these old members to join the new class or division, should any of them elect to do so.    4. To transfer from the reserve fund and from the other money on hand from which death benefits are payable a percentage of the moneys comprising these funds to a new fund for the benefit of members comprising that class or division.    5. To render the funds of each division, after the transfer, liable only for losses arising by deaths of members in the division in which the deaths occur.    Pursuant to that plan a division of the funds was made July 1st, 1913.    There were then six thousand four hundred and ninety-one members who joined prior to March 1st, 1910, and who had not consented to transfer their memberships to the new division, and twelve thousand one hundred and eleven members who had either joined subsequent to March 1st, 1910, or had consented to be transferred to the new division; these were classed as members of the new division.    The money then on hand which was liable for the payment of death benefits, including the reserve fund, was $57,-438.37.    The aggregate life expectancies of the six thousand four hundred and ninety-one members was ascertained to be one hundred and fifty-four thousand seven hundred and thirty-eight years, and like life expectancies of the new members was ascertained to be three hundred and thirteen thousand eight hundred and thirty years.    The funds were then divided in proportion to these aggregate expectancies.    This division resulted in leaving a fund for the old members of $18,968.34, and for the new members, $38,470.03.

The effect of placing members whose memberships antedate March 1st, 1910, in a division by themselves and prohibiting accessions of membership to that division cannot be doubted.    Without new members, it is only a question of time when the death benefit funds of that division will become inadequate to pay the losses arising through the death of its members.    It is possible that without an increase of dues that condition would have been ultimately reached even though no changes of the by-laws had been made; but the isolation of old members with the prohibi-

tion of accessions not only renders the loss of their policies inevitable but speeds the day.

It having been found unlawful, as against these non-assenting old members, for defendant to increase the dues of such members by the adoption of a by-law graduating dues according to ages of members, the amended by-laws now in question extend to these old members the option to either join the new class and thereby become obliged to pay increased dues or submit to isolation and the consequent certain loss of the measure of indemnity contemplated by their contracts. It seems impossible to distinguish in principle between a by-law either increasing dues or reducing the amount of death benefits (both of which have in this state been declared unlawful because violative of rights vested under contracts of this nature) and a by-law the certain operative effect of which is to render the payment of death benefits pursuant to the terms of the contract impossible.

The by-laws of defendant prior to March 1st, 1910, set forth a plan of mutual insurance which included the element of accessions of new members as an integral part of the plan, and its successful operation was well known to be dependent upon such accessions.

In such circumstances, it seems impossible to regard that part of the defined plan other than as entering into the contract and forming one of its material elements. To that effect is *Strauss* v. *Mutual Reserve Fund Life Association (N. C.), 36 S. E. Rep. 352; S. C.* on rehearing, *39 S. E. Rep. 55.* It is, however, clear that no injury would be suffered by the old members by reason of the establishment of the new class and prohibition of new members joining the old class if the revenues derived from the dues of members in the new class were not segregated and exempted from liability for losses occurring by death of the old members. It is this segregation of revenues which subjects the isolated class of old members to inevitable and early loss.

But the present amendments to the by-laws go even further than establishing a new class which shall include all new members and enabling the new class thus established to enjoy its own revenues as an independent class. A division is made upon an

assumed equitable basis of the accumulated reserve fund and all moneys on hand which is subject to the payment of death benefits between the isolated class of old members and the new class which originated March 1st, 1910, and includes as members of the new class all members of the isolated class who have heretofore been transferred to the new class. Separate and independent treasuries are thus established for each class and each treasury is exempted from liability for losses in the other class. There is also established a withdrawal privilege dating from March 1st, 1910, whereby the old members in the isolated class have been privileged to withdraw to the new class. Under this plan each member of the new class, whether a new member or an old member who has withdrawn from the old to the new class, has drawn to the treasury of the new class an assumed equitable percentage of the funds which were theretofore liable for all losses. The privilege is also given to other members of the old class to hereafter transfer their memberships to the new class, and in so doing carry with them to the treasury of the new class the assumed equitable share of such transferring members in the funds of the old class. Should it be found that the new members have not taken from the common funds more than their just share, it cannot be overlooked that the plan of division of funds embodies a past and future right of withdrawal of old members from the old to the new class and transfers to the new class a withdrawal value for members so withdrawing. The old by-laws do not contemplate a withdrawal privilege of members, but, on the contrary, contain a provision the observance of which would seem to render a future creation of a withdrawal privilege impossible. That provision is found in section 20 of the by-laws as they existed prior to March 1st, 1910:

"Sec. 20. Five per cent. of the monthly receipts shall be added to the Reserve Fund, the same to be deposited in banks or trust companies paying interest, said depositories to be designated by the trustees, or to be invested in such manner as the Supreme Circle may direct. No appropriation shall be made from the Reserve Fund, except for the payment of funeral benefits (now called death benefits) for members, and then only by a vote of the Supreme Circle at an annual or special session."

This inhibition of appropriations from the reserve fund for any purpose other than the payment of death benefits for members necessarily dedicates that fund to that exclusive purpose and use for its members. It may be urged that the privilege now created for members to withdraw or become members of a new division and carry with them to the new division an equitable percentage of this reserve fund is not inconsistent with the spirit of this by-law because the funds thus appropriated are to be used only for payment of death benefits; but it must be observed that the old by-laws deal alone with death benefits which have become payable through deaths of members, and does not contemplate appropriations from the reserve fund for the creation of a new fund to meet possible future losses, or the establishment of a withdrawal privilege for any purpose. The inhibition is against any appropriations from the reserve fund for any purpose except the payment of death benefits for members of the fund.

The inviolability of the contract between a mutual society and its members is illustrated in *Doane* v. *Millville Fire and Marine Insurance Co., 45 N. J. Eq. 274.* A by-law of that company restricted its liability for fire losses to the revenues of the fire department, and for marine losses to the revenues of the marine department, and the revenues of each department were by the by-laws required to be kept separate.

This by-law was held ineffective as against policyholders whose policies of insurance on their face contemplated an unrestricted liability of the company. As heretofore stated, complainant's contract of insurance is to be found in the provisions of the charter and by-laws already referred to; in my judgment, the amendments to the by-laws here in question cannot be enforced without an unlawful invasion of rights vested in complainant under that contract.

I am obliged to advise an injunction against the enforcement of the amendment herein referred to.