JASPER COGHLAN, EXECUTOR, &c., v. SUPREME CONCLAVE
IMPROVED ORDER HEPTASOPHS.

Submitted March 19, 1914—Decided June 30, 1914.

1. Where a contract between a fraternal beneficial association and
   a member provides that a benefit fund shall be paid on the death
   of the member to his "estate," it is payable to his executor or
   administrator.
2. Statutes are not to be given a retrospective effect or operation
   if their language reasonably admits of another construction.
3. The established rule "that words in a statute ought not to have
   a retrospective operation, unless they are so clear, strong and im-
   perative that no other meaning can be annexed to them," should
   be applied to the interpretation of by-laws of social and beneficial
   organizations in controversies with members in the civil courts.
4. A by-law of a fraternal beneficial association limiting the designa-
   tion of beneficiaries in its endowment certificates to a certain
   class, and providing that "any designation of beneficiaries, ex-
   cept by their individual names, shall render the endowment cer-
   tificate absolutely void," has no retrospective operation, so as to
   affect the validity of a prior contract not in harmony therewith.
5. The provision of section 210 of the Maryland statute (*Laws* 1894,
   *ch.* 295) that "Payments of death benefits may be made only to
   the widow" and certain others of a class in which the plaintiff
   is not included, has no retrospective operation, so as to affect the
   validity of a prior contract not in harmony therewith.
6. A by-law of a fraternal beneficial association providing that no
   entry shall be made in any application or benefit certificate, or
   otherwise, permitting the designation of the beneficiary by ref-
   erence to a will, and further providing that no will shall be per-
   mitted to control the appointment of the beneficiary, has no re-
   trospective operation, so as to affect the validity of a prior con-
   tract not in harmony therewith.
7. So far as fair construction of the language used will permit, the
   provisions and conditions of a contract of insurance with refer-
   ence to forfeiture should be strictly construed in favor of the
   insured and against the company.
8. An agreement by an applicant for a benefit certificate of a fra-
   ternal benevolent association to be bound by after-enacted by-
   laws, refers only to such by-laws as tend to further the subsist-
   ence of the contract between the association and the member,
   and not to such by-laws as defeat or impair the contract.
9. Where a fraternal beneficial association, for a valuable consid-
   eration, has issued to one of its members a benefit certificate
   payable on his death to a stated beneficiary, it is incompetent
   for the association by by-laws, or for the legislature by statute,

thereafter, without such member's consent, to impair the obligation of such contract by depriving the member of the valuable property right of such designation of the beneficiary of the certificate.

10. The opinion of another court in another case is not a defence to be pleaded in answer to an action.

On motion to strike out defences.

Before Justices GARRISON, TRENCHARD and MINTURN.

For the plaintiff, *Young & Bigelow.*

For the defendant, *W. Holt Apgar* and *Olin Bryan* (of the Maryland bar).

The opinion of the court was delivered by

TRENCHARD, J.   This is a motion to strike out five separate defences contained in the defendant's answer on the ground that they disclose no defence to the action.

The action is brought by the executor of the will of A. Judson Clark, deceased, against the Supreme Conclave Improved Order Heptasophs, a fraternal beneficial association of Maryland, operating by the usual subordinate lodge method. Plaintiff claims $2,000, the amount due on a contributor's endowment certificate made by the defendant as follows: "This certifies that A. J. Clark has been initiated, and is a contributing member of Unity Conclave, No. 189, in good standing.   In accordance with and under the provisions of the laws governing the order, the sum of two thousand dollars will be paid by the Supreme Conclave Improved Order Heptasophs as a benefit, upon due notice of his death and the surrender of this certificate, to such person or persons as he may, by will or entry on record book of this conclave, or on the face of this certificate, direct the same to be paid, provided he is in good standing when he dies."

On the face of the certificate is the following direction: "To the Officers and Members of Supreme Conclave Improved Order Heptasophs:   It is my will that the benefits named in

this Certificate be paid to Estate." (Signed) "A. J. Clark." The application for membership also directs that "in case of my decease all benefits to which I may be entitled from the Improved Order Heptasophs be paid to my estate."

The certificate is dated April 2d, 1889.

The first defence alleges that defendant adopted a by-law in June, 1889, restricting the class to whom endowments might be made payable to certain relatives and dependents; that the plaintiff's testator was notified to surrender his certificate and failed to do so.

The second defence sets forth a statute of Maryland enacted in 1894 of similar import to the by-law mentioned in the first defence.

The third defence recites a decision of the Maryland Court of Appeals construing a by-law of the Knights of Columbus.

The fourth defence states that defendant, in June, 1893, amended its by-laws so as to prohibit designation of beneficiaries by will.

The fifth defence is that, by reason of defendant's constitution and by-laws revised in 1911 and in force at the death of A. Judson Clark, defendant is indebted not to plaintiff but to Mr. Clark's next of kin.

All of these by-laws and the statute were adopted after the endowment certificate had been issued. We shall hereafter state more fully their provisions.

We are of opinion that the matters above mentioned constitute no defence to this action; that the statute and by-laws are not retrospective or intended to affect the certificate in question; that even if so intended, neither plaintiff nor his testator consented thereto or was bound thereby.

The endowment certificate created a contract between the defendant and Mr. Clark. In essence it is a contract of a life insurance. *Holland* v. *Chosen Friends*, 54 *N. J. L.* 490; *O'Neill* v. *Supreme Council*, 70 *Id.* 410; *Sautter* v. *Supreme Conclave*, 76 *Id.* 763.

It differs from the ordinary insurance contract only in that its terms are interpreted in the light of the application for membership, and of the constitution and by-laws of the asso-

ciation. Inasmuch as the constitution and by-laws, as they were at the time of the issuance of the certificate, do not appear in the record, they throw no light on the meaning of this contract.

The complaint alleged, and the answer does not deny, that the contract was made in Newark, in this state.

By the contract the defendant agreed with Mr. Clark to pay $2,000, at his death, to his "estate." While the word "estate" is not very apt, its meaning is clear. The parties undoubtedly meant that the money should be paid to the insured's executor or administrator, to be administered as a part of the property which the insured might leave at his death. *Sulz* v. *Mutual Reserve*, 145 *N. Y.* 563; 40 *N. E. Rep.* 242; *Daniels* v. *Pratt*, 143 *Mass.* 216; 10 *N. E. Rep.* 166.

As there is no suggestion in the record that this designation of a beneficiary was improper when made, it only remains to be considered whether any subsequent matter alleged in defence avoids this contract.

It is a familiar and important principle, always to be kept in mind in the construction of statutes, that they are not to be given a retrospective effect or operation if their language reasonably admits of another construction. *Frelinghuysen* v. *Morristown*, 77 *N. J. L.* 493.

The established rule "that words in a statute ought not to have a retrospective operation, unless they are so clear, strong and imperative that no other meaning can be annexed to them," should be applied in the interpretation of by-laws of social and beneficial organizations in controversies with members in the civil courts. *Roxbury Lodge* v. *Hocking,* 60 *N. J. L.* 439.

The by-law adopted by the defendant in June, 1889, and recited in the first defence, with unimportant omissions, reads:

"Sec. 3. The endowment may be made payable to the following classes of persons only, viz.: (*a*) to a member's father, mother, wife, children, grandchildren, grandparents, brothers or sisters, or any, or as many of them as the member shall desire and specify; in any of which cases no proof of dependency shall be required by the Supreme Secretary before issu-

ing the endowment certificate. (*b*) To any person or persons * * * who may be dependent altogether or in part upon the member * * * in which latter cases * * * written evidence of the dependency * * * must be furnished to the satisfaction of the Supreme Secretary before the endowment certificate shall be issued * * *."

"Sec. 4. All beneficiaries shall be designated in accordance with the foregoing regulations * * *; and any designation of beneficiaries, except by their individual names, shall render the endowment certificate absolutely void and of no effect."

Clearly, this by-law is not retrospective. It limits the class to whom benefits may be made payable, but does not attempt to avoid or alter certificates theretofore issued.

The use of the word "shall" in the last clause indicates that a prospective operation only was intended. No doubt if this clause had been intended to affect outstanding certificates, it would have so declared. The fact that the improper designation is made to render the certificate absolutely void makes it clear that outstanding certificates are not intended to be affected, for the defendant cannot be supposed to have had the extraordinary intention to make absolutely void certificates which were valid when issued and which were accepted and paid for in good faith.

The gist of section 210 of the Maryland statute (*Laws* 1894, *ch.* 295), cited in the second defence, is the provision "payments of death benefits may be made only to the widow" and certain others of a class in which the plaintiff is not included.

This sentence is part of a lengthy statute regulating fraternal organizations, prescribing the method of their incorporation, the privileges they shall enjoy, the reports they shall make to the insurance commissioner, &c. There is nothing in this statute as a whole to indicate that the assembly of Maryland intended to vitiate any past transaction or to alter the effect of any outstanding certificate. The obvious purpose of the provision quoted is to limit and regulate the

future activities of fraternal organizations, and it should be so interpreted.

The Superior Court of Delaware, in a well-considered opinion by Chief Justice Lore, discussed the act now before the court and also the by-law pleaded in the first defence, and held that they were not retrospective and did not affect certificates issued before their enactment. *Emmons* v. *Supreme Conclave*, 63 *Atl. Rep.* 871.

The fourth defence sets up an amendment to the defendant's by-laws, made in 1893, providing that no entry shall be made in any application or benefit certificate, or otherwise, permitting the designation of the beneficiary by reference to a will, and further providing that no will shall be permitted to control the appointment of the beneficiary.

The two clauses of this amendment have one purpose—to prevent appointments by will—and the first clause indicates that this purpose is prospective only, and does not relate to prior outstanding certificates.

The foregoing observations apply with full force to the matter set up in the fifth defence and dispose of it.

But even if the by-laws and statute before mentioned were intended to have a retroactive operation, they would still be ineffectual to defeat the plaintiff's claim.

The endowment certificate evidenced a contract. That contract, like all other contracts, could only be altered by the consent of both parties—by a new meeting of minds.

There is no suggestion in the answer that Mr. Clark, or the plaintiff, ever consented, after the making of the contract, to a change in it. On the contrary, the first defence states that Mr. Clark was notified to surrender his certificate, and failed to do so.

The defendant, however, contends that Mr. Clark's consent was given in advance, and is set forth in the application and in the certificate itself. The application contains the statement: "I agree to make punctual payments of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules and usages of the order now in force, or which may hereafter be adopted by the same." The

certificate states that the sum of $2,000 will be paid to the estate "in accordance with and under the provisions of the laws governing the order."

The law mentioned in the certificate presumably was the law existing at the time the certificate was issued. Also, it was a law authorizing payment to the estate, for, otherwise, the payment would not be "in accordance with and under" the law.

The agreement to "conform," contained in the application, requires more consideration.

This application was for membership in a fraternal organization. The natural meaning of the agreement by the applicant to conform to the by-laws, is that he shall conduct himself as a Heptasoph, in his relations with the society and his fellow-members, in conformity with its rules in force at the time of his election, or thereafter adopted. That Mr. Clark conformed to the rules of the society is indicated by the admitted fact that he was a member in good standing at his death. It would certainly be a strained construction of the agreement to conform in all respects to the laws to construe it to mean that the applicant's insurance policy may be altered by the insurer at its pleasure. So far as fair construction of the language used will permit, the provisions and conditions of a contract of insurance with reference to forfeiture should be strictly construed in favor of the insured and against the company. *Harris* v. *American Cas. Co.,* 83 *N. J. L.* 641; *Bohles* v. *Prudential Insurance Co.,* 84 *Id.* 315.

The rule is established in this state that an agreement by an applicant, to be bound by after-enacted by-laws, refers only to such by-laws as tend to further the subsistence of the contract between the association and the member, and not such by-laws as defeat or impair the contract. *O'Neill* v. *Supreme Council, supra; Sautter* v. *Supreme Conclave, supra; Poole* v. *Supreme Circle,* 85 *Atl. Rep.* 821; *affirmed,* 80 *N. J. Eq.* 259.

Moreover, it has also been decided in those cases that such contract conferred upon the member a property right; "that even the power of appointment of a beneficiary incidental to

the *status* of membership in a fraternal association is a valuable property right." *O'Neill* v. *Supreme Council,* 70 N. J. L. 410, 417.

Mr. Clark had, by his original contract, the right to have the amount of his policy paid on his death to his executor, to be distributed according to his will to such of his kindred and friends or to such charities as he preferred. This was the motive which induced Mr. Clark to make the contract, and when the defendant sought to take away Mr. Clark's freedom of disposing of the benefit, and to restrict payment to certain next of kin, for whom he may have had no affection, it attacked the very essence of the contract.

Clearly, therefore, if the by-laws and Maryland statute in question be regarded as intended to apply to prior contracts between the defendant and its members, they are ineffectual for such purpose, since it was not competent for either the defendant or the legislature to impair the obligations of such contracts. *Ball* v. *Board of Trustees,* 71 N. J. L. 64; 15 *Am. & Eng. Encycl. L.* (*2d ed.*) 1044.

The fifth defence sets up the opinion of the court in *Mathieu* v. *Mathieu,* 112 *Md.* 625.

But this opinion, while of course worthy of the consideration which we have given it in the decision of this present case, does not constitute a defence to be pleaded.

The result is that the first, second, third, fourth and fifth defences will be stricken out, with costs.