JOHN SARACINO and MARY SARACINO, complainants-appellants,

*v.*

KOSOWER CONSTRUCTION COMPANY, defendant-respondent.

[Submitted October 29th, 1927.   Decided February 6th, 1928.]

1. Testimony of a witness that he was told by another person that a third person had told him that a certain person was dead, is not sufficient proof of the death, where the person making such statement was not a member of the family of the person supposed to be dead, and it is not shown what means he had of knowing of the alleged fact.

2. It is the uniform rule in New Jersey to decline to decree specific performance at the suit of the vendor of real estate where a reasonable doubt concerning the title exists, though rested on grounds merely debatable, but which might visit upon the purchaser litigation in that regard, and that, too, where at law the title might in fact be declared good.

3. In a vendor's suit for specific performance of a contract for the sale of real estate made in 1926, the proofs showed that in 1874, one Jacob Peer was a tenant in common of the property which the vendor had contracted to convey by deed of warranty; that in that year he left his wife and infant daughter and home, and in 1884 his wife obtained an absolute divorce for desertion. His former wife and his sister testified that his relatives had never thereafter seen or heard of him, with the exception of his cousin, who testified that in 1889 he was told by one Crockett, a friend of the cousin, that he (Crockett) had met Peer previously in the "gold fields," where Peer and another man were working a "gold claim," and that this other man told Crockett a couple of weeks later that Peer was dead.   Our Death act (*Comp. Stat. p. 1904*), after declaring that a person who has been absent for seven years successively shall be presumed to be dead, in the absence of rebutting proof, then provides, "but an estate recovered in any such case, if in a subsequent action or suit, the person so presumed to be dead shall be proved to be living, shall be restored to him"—*Held*, that this latter provision justified the court of chancery, in the exercise of its discretion, in refusing to force upon the vendee the title tendered, which depended upon the death of Peer, since the facts and circumstances in relation to his departure from home furnish a reasonable ground for apprehending his return, and, consequently, his right to recover the property in case he should do so.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Church.

*Messrs. Welanko & Strauss* (*Mr. Abraham Welanko,* on the brief), for the appellants.

*Messrs. Meaney & Lifland* (*Mr. Thomas F. Meaney,* of counsel), for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

The bill in this suit was filed to compel the specific performance of a contract, made November 9th, 1926, for the sale, by deed of warranty, of a piece of land located in Morris county; the complainants, Saracino and wife, being the intending vendors and the Kosower Construction Company the vendee. The defendant, when the time for performing the contract came, refused to accept the conveyance tendered upon the ground that the title was defective.

The proofs at the trial showed that in 1874 one Jacob Peer was a tenant in common of the property; that in that year he left his wife and infant daughter and home, and in 1884 his wife obtained an absolute divorce on the ground of desertion. His former wife and his sister testified that his relatives had never thereafter seen or heard of him, with the exception of his cousin, Thomas Peer, who testified that in 1889 he was told by one Crockett, a friend of Thomas, that he (Crockett) had met Jacob previously in the "gold fields," where Jacob and another man were working a "gold claim," and that this other man told Crockett a couple of weeks later that Jacob was dead. No other members of the family testified. It further appears that Jacob's daughter, Laura, in April, 1910, joined in a conveyance of the property in question to a predecessor in title of the complainants, in which deed she is described as the only heir-at-law of Jacob Peer. In this posture of the evidence the vice-chancellor advised a decree dismissing the bill upon the ground that the de-

fendant was not obligated to take the conveyance, because of the lack of proof that Jacob Peer was actually dead.

Now, it is quite clear that the testimony of Thomas Peer that he was told by another person that some other person had told him that Jacob Peer was dead is not sufficient proof of the death, where, as here, the person making such statement was not a member of the family of Jacob Peer, and it is not shown what means he had of knowing of the alleged fact. *17 C. J. 1176,* and cases there cited.

The complainants, however, relied below and rely here on our statute (the Death act) as creating a legal presumption of death at the expiration of seven years after he had been last heard of.

In the case of *Meyer* v. *Madreperla, 68 N. J. Law 264,* this court held, in reviewing a judgment of the supreme court, that proof of the absence of a person, whose existence is in question, from the state or from his last known residence, for a period of seven successive years defeats the presumption of continuance in life, and raises a counter-presumption of death, and that this counter-presumption of death is not one of fact, but one of law, which, in the absence of proof rebutting such presumption, stands as proof of death. In the cited case the plaintiff sued to recover the down money paid on a contract for the sale of land, the claim being that the defendant could not make a good title because he had acquired the same from the children of one McDermott, who died testate, and that one of the sons of the testator did not join in the execution of the deed. The defense was that this son had disappeared and was unheard of for more than seven years. The court held that the presumption of law to which we have referred defeated the right of the plaintiff to recover back the down money, and that at law the title would be presumed to be good. At the close of the opinion the court intimates that where the action was for specific performance, it might be that the possibility of the presumption being erroneous would induce a court of equity, in its discretion, to deny specific performance.

Now, it is the uniform rule in this state to decline to decree specific performance at the suit of the vendor of real estate where a reasonable doubt concerning the title exists, though rested on grounds merely debatable, but which might visit upon the purchaser litigation in that regard, and that, too, where at law the title might in fact be declared good. *Van Riper* v. *Wickersham, 77 N. J. Eq. 232.* The first section of our Death act (*Comp. Stat. p. 1904,* enacted in 1797 and amended in 1895), after declaring, in effect, that a person who has been absent for seven years successively shall be presumed to be dead, in the absence of rebutting proof, then provides, "but an estate recovered in any such case, if in a subsequent action or suit, the person so presumed to be dead shall be proved to be living, shall be restored to him." It seems to us this latter provision justified the court of chancery, in the exercise of its discretion, in refusing to force upon the vendee the title tendered, under the proofs in the present case. We assume that the testimony constituted proof of absence of Peer for the period of seven successive years and so defeated the presumption of continuance in life, and raised a counter-presumption of death, and, hence, that the vendor's title was good at law. But a court of equity has a discretionary power with respect to a title which is doubtful, though good at law. If living, Peer would now be about seventy-seven years old. Apparently he left his wife with intent to desert and permanently remain away and perhaps to conceal himself from her and his family. The facts and circumstances proved make it appear reasonable and highly probable that he would remain away from his wife without communicating with her during all these years, without its being necessary to account for such absence and silence on the theory of his death. We therefore consider that there is a reasonable ground for apprehending his return, and, consequently, his right to recover the property in case he should do so, makes the title tendered, the marketability of which depends upon his death, one which a court of equity ought not to compel the intending purchaser to take. And this conclusion is not rested at all upon the possibility that, if

dead, he left lawful issue from a marriage following his divorce.

We believe that the conclusion we have reached in this case is in harmony with conclusions reached in other well-considered cases in this and other jurisdictions. Thus, in *Potter* v. *Ogden, 68 N. J. Eq. 409,* where a contract for the sale of land called for a perfect title, and, in a suit by the vendor for specific performance, it appeared his grantor's deed was executed as if she were unmarried, specific performance was denied, though it was shown that her husband had been absent for seven years at the date of the deed, whereby a presumption of death arose, it also appearing that defendant's grantor was eighty-six years old, and that her children possibly controlled, to a large extent, the evidence on which the rebuttable presumption was founded. Again, in *Vought* v. *Williams, 120 N. Y. 253,* which was an equity suit by the intending vendor for specific performance, the New York court of appeals held that the presumption of death of one who left home for causes unknown and had not been seen or heard of by his family or friends for upwards of twenty-four years, and who, when last seen was about twenty-four years old, unmarried, dissipated, in feeble health and in destitute condition, being in want of clothing, is not sufficiently strong to make marketable a title to real estate which depended upon his death, and the court accordingly refused to enforce the contract.

The decree below will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ.   15.

*For reversal*—None.