PASSAIC COUNTY CIRCUIT COURT.

ANNA KOPACKA (FORMERLY ANNA JANCI, ALSO KNOWN AS ANNA JOHNSON), PLAINTIFF, v. ROMAN AND GREEK CATHOLIC GYMNASTIC SLOVAK UNION SOKOL, A CORPORATION, DEFENDANT.

Decided March 31, 1936.

For the plaintiff, *John D. Vasilyk*.

For the defendant, *Alexander M. MacLeod*.

WOLBER, C. C. J.  This case was submitted upon a stipulation of facts and tried without a jury.  From the stipulation, the following appears:

This is an action brought by Anna Kopacka against the Roman and Greek Catholic Gymnastic Slovak Union Sokol to recover upon a benefit certificate which had been issued by the defendant to John Janci (also known as John Johnson), with plaintiff as beneficiary.

The defendant is a mutual benefit society. In 1916 it issued to the above John Janci a certificate providing for a death benefit fund in the sum of $1,000, payable to plaintiff's wife as beneficiary. The certificate, among other things, provided:

"This certificate, the Charter, Constitution and By-laws of the Union and the Application for Membership, including the statements and answers to the Medical Examiner, signed by the applicant, and all amendments to each thereof shall constitute the contract between the Union and the said member. It is further agreed that copies, certified by the Secretary of the Union, of the application for membership, of the statements and answers to the Medical Examiner, of the Charter, Constitution and By-laws, and of all amendments thereto shall be received as evidence of the terms and conditions thereof and that any changes, additions and amendments to said Charter, Constitution or By-laws duly made or enacted subsequent to the issuance of this Certificate, including those affecting dues and assessments, shall bind said member and his beneficiaries and shall govern and control the contract in all respects as fully and in the same manner as if such changes, additions and amendments had been made prior to, and were in effect at the time of the application for membership."

In 1927, the by-laws of the defendant were further amended, and it sets forth as follows:

"No lapse of time, absence or disappearance of a member, heretofore or hereinafter admitted into the organization, shall entitle the beneficiaries to the death benefit, until sufficient proof of death of such member while in good standing, has been given, except as follows: the disappearance or the long continued absence of a member, shall not be regarded as evidence of his death nor give the beneficiaries the right to recover any benefit accrued by any certificate heretofore or hereinafter issued by the Slovak Catholic Sokol until the expiration of the full term of the member's expectancy of life, according to the National Fraternal Congress table of mortality. This provision shall remain in force in every state

or country, any statute or statutes of such states or countries notwithstanding. The term "while in good standing" shall signify that the death benefit certificate has not lapsed, or been forfeited and that all payments and duties towards the assembly and the Slovak Catholic Sokol have been fulfilled."

The by-laws further provide:

"The beneficiary or beneficiaries entitled to the death benefit in accordance with these by-laws, before they may make any claim for such benefit, or before they be entitled to such benefit, shall furnish the supreme assembly, through the office of the assembly of which the deceased was a member, an official certificate of death, issued by the proper authorities, the membership certificate of said deceased member, and the certificate of the assembly of which the deceased was a member, and such further proofs as the supreme assembly may require, by its rules and regulations, for the purpose of identification."

On February 4th, 1932, after the said John Janci had been absent for more than seven years, and upon proceedings instituted for that purpose, the surrogate of Morris county entered a decree which "ordered, adjudged and decreed that the said John Johnson be presumed to be dead." *Pamph. L.* 1927, *ch.* 275.

It is stipulated that the present action was commenced more than one year after the entry of the decree. But it does appear that plaintiff did present the decree of the surrogate to the defendant society within one year, according to the by-laws, but that it was rejected because not in the form deemed by it to be sufficient to pay under the terms of the by-laws.

The defendant contends that in any event, the decree of presumption of death entered by the surrogate does not comply with the provisions of the by-laws as amended in 1927, and that only proof of *actual death* will satisfy its requirements.

The plaintiff contends that the by-law adopted in 1927 is not binding upon her because it was enacted after her husband became a member; and further, that the by-law as

applicable to him is unreasonable, void and against the public policy of this state.

I believe there are two questions presented for my determination:

(1) Was the by-law of 1927 providing for the form of proof of death binding upon the plaintiff, as a representative and one claiming under the member; and

(2) What is the validity of the by-law which attempts to alter the rules of evidence; or, as in this case, one that stipulates to dispense with the operation of a presumption raised by law?

As pointed out, the certificate provides that the defendant reserves to itself the right to amend or alter the by-laws from time to time and as occasion may require. It is well settled that such a reservation of the right to amend is a legal right, providing that such further amendments after the issuance of the certificate, do not materially alter the contract of the member of the society. *O'Neill* v. *Supreme Council, &c.,* 70 *N. J. L.* 410; 57 *Atl. Rep.* 463; *Sautter* v. *Improved Order of Heptasophs,* 76 *N. J. L.* 763; 71 *Atl. Rep.* 232; *Coghlan* v. *Improved Order of Heptasophs,* 86 *N. J. L.* 41; 91 *Atl. Rep.* 132; *Parks* v. *Supreme Circle, &c.,* 83 *N. J. Eq.* 131; 89 *Atl. Rep.* 1042.

From what will hereafter appear, I believe that the by-law was reasonable, and binding upon the plaintiff or one under whose rights she claims, even though enacted subsequent to the time he became a member.

I am brought to the consideration of the legality of the by-law. As stated, the plaintiff contends that the by-law stipulating for proof of actual death is contrary to public policy.

It has been declared that public policy is a variable consideration, but the principles to be applied have always remained unchanged and unchangeable, and public policy is only variable in so far as the habits, capacities and opportunities of the public have become more varied and complex. The relations of society become from time to time more complex; statutes defining and declaring public and private

rights multiply rapidly, and public policy often changes as the laws change, and therefore new applications of old principles are required. *Brooks* v. *Cooper,* 50 *N. J. Eq.* 761; 26 *Atl. Rep.* 978.

The power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. *Brooks* v. *Cooper, supra.*

The theory upon which it is argued that this by-law, which dispenses with the rule of presumption of death raised by the surrogate's decree, is void, is that the rule obtains by force of the statute, and has therefore become the public policy of this state, and the contract undertaking to change same is invalid.

This contention is without force or support. In the first place, the statute is designed as a rule of evidence, and may be rebutted. *Clarke* v. *Canfield,* 15 *N. J. Eq.* 119; *Armstrong* v. *Armstrong,* 99 *Id.* 19; 132 *Atl. Rep.* 237. And further, if it appears that the "decedent" at some time appears, the statute provides that his property must be restored to him. *Comp. Stat., p.* 1904, § 1.

Our courts have refused specific performance of contracts for the sale of real property where the title rests upon the force of such presumption. *Saracino* v. *Kosower Construction Co.,* 102 *N. J. Eq.* 230; 140 *Atl. Rep.* 458. It is only in cases where no provision is made as to the form of proof of death that the fact of the death from such a presumption will arise and be considered sufficient. *Apfelbaum* v. *Prudential Insurance Co.,* 12 *N. J. Mis. R.* 62; 161 *Atl. Rep.* 501.

Instances of the "resurrection" of persons presumed to be dead by decree of courts are quite often and common.

The question of the legality of by-laws similar to the one involved in the case at bar has been passed upon by courts of various jurisdictions.

In the first class, it is generally held that, where the presumption of death from seven years' absence unheard of finds expression in statutory enactment, such enactment

becomes the public policy of the state, and any contract contravening such policy will not be enforced. *Modern Woodmen* v. *Hurford*, 193 *Ky.* 50; 21 *A. L. R.* 1340; 235 *S. W. Rep.* 24; *Cobble* v. *Royal Neighbors*, 291 *Mo.* 125; 21 *A. L. R.* 1346; 236 *S. W. Rep.* 306; *McCormick* v. *Woodmen of the World*, 57 *Cal. App.* 568; 207 *Pac. Rep.* 943; *Sovereign Camp, W. W.*, v. *Piper*, Texas Civ. App., 222 *S. W. Rep.* 649; *National Union* v. *Sawyer*, 42 *App. D. C.* 475.

As pointed out, no such policy exists in this state. The statute creates a presumption as evidence, and was the rule at common law long anterior to its expression by the legislature.

In the second class, by-laws doing away with the presumption of death from seven years' absence, passed after the insured had entered into the contract of insurance, although he undertook to be bound by subsequent by-laws, have been held invalid on the ground that they are unreasonable. This line of authorities has no application to this case, because the provisions of the by-laws agreeing to be bound by subsequently enacted by-laws, is valid because of what will hereafter appear. Suffice it to say that at the time of its enactment, it was a reasonable amendment and did not materially alter the member's rights. *O'Neill* v. *Supreme Council, supra.* It did change the form of proof of death, but whether the member had his vested right in the particular form required by the defendant remains to be considered. As illustrative of the second class of authorities, see *Modern Woodmen* v. *White*, 70 *Col.* 207; 17 *A. L. R.* 393; 199 *Pac. Rep.* 965; *Haines* v. *Modern Woodmen*, 189 *Ia.* 651; 178 *N. W. Rep.* 1010.

In the third class of cases, it is held that the rule of presumption of death is one of evidence only, that parties have the right by contract to change the rule, and by so doing they do not contravene the public policy of the state. *Steen* v. *Modern Woodmen*, 296 *Ill.* 104; 129 *N. E. Rep.* 546; 17 *A. L. R.* 406; *Kelly* v. *Supreme Council*, 46 *App. Div.* 79; 61 *N. Y. Supp.* 394; *McGovern* v. *Brotherhood of Locomotive Firemen and Enginemen*, 31 *Ohio C. C.* 243;

affirmed by the Supreme Court of Ohio in a memorandum opinion, 85 *O.* 460; 98 *N. E. Rep.* 1128; *Porter* v. *Home Friendly Society,* 114 *Ga.* 937; 41 *S. E. Rep.* 45; *Becker* v. *Interstate Businessmen's Accident Association* (*C. C. A.*), 265 *Fed. Rep.* 508 (provision requiring eye witnesses to accidental injury); *Mays* v. *Woodmen of the World,* 151 *Tenn.* 604; 271 *S. W. Rep.* 34; 40 *A. L. R.* 1266.

As opposed to the decision of the third class, the plaintiff has cited the case of *Gaffney* v. *Royal Neighbors,* 31 *Idaho* 549; 174 *Pac. Rep.* 1014, and others. The particular case above cited is criticised by Professor Wigmore as being unsound. *Wigm. Ev.* 100, § 7-A. Likewise by Professor Williston in *Williston on Contracts* 3018, § 1725. The language of its holding is not impressive:

"We think the contract is in violation of the spirit of our insurance laws. The effect is to protect the insurer against an occasional fraudulent disappearance, and operates to defeat recovery by the beneficiary of the insured who has met death away from home or under circumstances to render identification of his body or proof of his death impossible. It not only protects the company against fraud but it as well defeats the beneficiary in some cases who is entitled to the benefits of the contract.

"Some members of the court think that the contract is unreasonable and against public policy for this reason, and that this is the better ground upon which to base the invalidity of the provision in question. Others of the court, including the writer, are of opinion that the stronger and better ground is that it unduly limits and deprives the court of the exercise of its functions to hear any evidence upon the only issue that could be in the case."

In our state, I believe the by-law involved may be assimilated to provisions found in contracts of insurance limiting the time within which action must be commenced; provisions in insurance policies providing that subsequent variations must be in writing and endorsed upon the policy, and many other provisions which parties provide for the regulation of litigation and the manner of pursuing rights. As illustrative,

a contract waiving a right of appeal has been upheld. *Harmina* v. *Shay*, 101 *N. J. Eq.* 273; 137 *Atl. Rep.* 558. On the insurance matters above discussed, see *Ignazio* v. *Fire Association of Philadelphia*, 98 *N. J. L.* 602; 121 *Atl. Rep.* 456; *Sullivan* v. *Maroney*, 76 *N. J. Eq.* 104; 73 *Atl. Rep.* 842; *affirmed*, 77 *N. J. Eq.* 565; 78 *Atl. Rep.* 150.

An excellent statement of the rule upholding the legality of such by-laws identical with that involved in the case at bar is found in *Steen* v. *Modern Woodmen, supra:*

"We think it clear, from a consideration of the by-law and the apparent purpose for which it was passed, that the age fixed at which the expectancy of life is to begin to run is the time of disappearance. The object of the by-law is to establish a rule of evidence in disappearance cases different from the seven years' absence rule established by the common law. The rule of evidence sought to be established is that, when a member disappears and nothing is heard from him, he is presumed to live out his natural expectancy, and at the end of his natural expectancy he will be presumed to be dead, but not until that time has arrived. This natural expectancy is to be determined according to the National Fraternal Congress Table of Mortality, a table recognized by the insurance departments and the courts of practically every state in the Union. * * *

"At the time this benefit certificate was issued there was a well established rule of evidence in this state that the unexplained absence of a person from home, without having been heard from for seven years by those who would naturally have heard from him if he had been alive, although diligent efforts were made to find him, raised a presumption of death, unless the circumstances of the case were such as to account for his not being heard of, without assuming his death. *Whiting* v. *Nicholl*, 46 *Ill.* 230; 92 *Am. Dec.* 248; *Donovan* v. *Major*, 253 *Ill.* 179; 97 *N. E. Rep.* 231. This is an arbitrary presumption, rendered necessary on grounds of public policy, in order that rights depending upon life or death of persons long absent and unheard of may be settled by some certain rule. Jones, in volume 1 of his *Commentaries on*

*Evidence,* section 61, says: 'Thayer, in his usual thorough way gives an interesting and instructive account of the presumption, and fixes its application in its present form as of 1805, and that it appeared for the first time in the text-books of 1815 and was speedily followed by other eminent writers, ending in 1876 with Stephen. "Here, then," says Thayer, "in seventy years we find the rule about a seven years' absence (1) coming into existence in the form of a judicial declaration about what may or may not fairly be inferred by a jury in the exercise of their logical faculty, the particular period being fixed by reference to two legislative determinations, in specific cases of a like question; (2) passing into the form of an affirmative rule of law requiring that death be assumed under the given circumstances. This is a process of judicial legislation, advancing what is a mere recognition of a legitimate step in legal reasoning to a declaration of the legal effect of certain facts." '

"This legal presumption of death from seven years' unexplained absence arose by analogy under two early English statutes, the one exempting from the penalty of bigamy any person whose husband or wife should be continuously beyond the seas, or should absent himself or herself for the space of seven years together, and the other providing that persons in leases for lives, who shall remain beyond the seas or absent themselves from the realm for more than seven years, shall, in the absence of proof to the contrary, be deemed naturally dead. That the rule in question is merely a rule of evidence is unquestioned. *Stevenson* v. *Montgomery,* 263 *Ill.* 93; 104 *N. E.* 1075, *Ann. Cas.* 1915C, 112. It is so treated by all the text-book writers. It was a rule born of necessity, to prevent the prosecution for bigamy of a deserted spouse, on the one hand, and to settle the property affairs of the absentee, on the other hand. It grew up in England at a time when travel was fraught with every danger known to man, and when means of communication were primitive. Since this rule of law was established, the social aspects of our civilization have been almost revolutionized. The improbability that accident, injury, sickness, or death could overtake

a member of this society, without information of the fact reaching his family and friends, is very great. In case of need he scarcely could fail to find assistance among the million members of his own fraternity. Hospital, police, burial, and other records are collected and preserved in practically every state in this country, and newspapers are published in every city and village, and, except for the reasons for which the law was originally established, there is now no sound reason for continuing the rule, except that it has existed for so long a time that convenience makes it the best rule to follow, where no other rule is established by statute or by agreement. 'The contract in question here is insurance on life,' and the one essential fact necessary to mature this contract is the death of the insured. The burden is on the beneficiary to prove this death. The rule of law which appellant invokes is a rule of evidence, and relates to the manner and *quantum* of proof necessary to establish death. By the common law rule, a finding of the death of the insured will be sustained on proof of seven years' continued absence without intelligence of such absent person. Under the by-law in question such proof is not sufficient unless the absence has continued for a period equal to the member's expectancy of life. There is no vested right in a rule of evidence, and parties may, by contract, change an established rule of evidence, and provide that a different rule shall apply in determining controversies that may arise between the parties to the contract. * * *"

In New Jersey it has likewise been held that no one has a vested right in the rules of evidence, even though a statute excludes certain proof and defeats recovery upon a contract otherwise legal. *Kozler* v. *New York Telephone Co.,* 93 *N. J. L.* 279; 108 *Atl. Rep.* 375. In that case, Mr. Justice Swayze said:

"The question of the power of the legislature to make evidence inadmissible is different from the question so frequently passed upon of the effect of proof of evidential facts as *prima facie* proof of facts in issue. We do not suppose that the legislature could under the guise or form of a rule

of evidence or procedure deprive parties of substantial rights. On the other hand, the legislature certainly has the power to prescribe what proof shall be essential, as, for instance, to comply with the statute of frauds; and it has also power to prescribe what contracts shall be void as against public policy, as, for instance, contracts in restraint of trade, or immoral contracts or contracts *contra bonos mores*. We see no reason why the legislature may not prescribe rules of evidence; for example, rules regulating the competency of witnesses and excluding them for interest, as at common law, and as we still do in the case of transactions with a decedent, even though the effect may be to prevent enforcement of a legal contract. Clearly, the legislature, in creating a new tribunal, like the Court for the Trial of Juvenile Offenders, may prescribe what record it shall keep or whether it shall keep any record at all, and if it does, what use, if any, shall be permitted of the record. It is equally clear that the legislature may prohibit parol proof of the court's action. On general principles proof must be by the record. The fact that exclusion of parol proof because proof must be by the record, and exclusion of the record by legislative enactment may result in preventing a party from recovering on a contract because of the impossibility of proof, is no argument against the legislative restrictions. The right to contract is not unlimited. Cases are frequent where contracts are condemned as against public policy, and the legislature as long at least as its condemnation is based on substantial reason and is not merely arbitrary or colorable, may determine what is public policy. We see no reason why the legislature may not enact that it is against public policy to hold over a young person *in terrorem,* perhaps for life, a conviction for some youthful transgression. If it may pass an act of general amnesty, it may surely pass an act of amnesty as to juvenile offenders. * * *"

It seems that in view of the purpose which the by-law intends to preserve, namely: to prevent the assertion of doubtful claims and to adopt a rule of certainty as against one of uncertainty, and particularly in view of the beneficient pur-

pose to maintain the fund against spurious claims for the profit of remaining members of such mutual benefit societies, that the provision does not offend any rule of public policy of this state.

In *Steen* v. *Modern Woodmen, supra,* the court observed this thought in the following language:

"We think any provision of a contract which tends to prevent unjust and fraudulent claims should be upheld. No insurance society could exist on reasonable rates if the face of the straight life policy were to become due at the end of seven years. As applied to life insurance, the common law seven-years-absence rule is without reason, and is based neither on fact nor experience. While the common law rule will be enforced where the parties have not contracted otherwise, we think it not only reasonable, but entirely sound from a business standpoint, that the parties should contract to establish death, in disappearance cases, in accordance with tables scientifically made from experience. This by-law does nothing more than change a rule of evidence. * * *"

The case of Apfelbaum *v.* Prudential Insurance Co. is to be distinguished from the facts in this case, because there it appeared that the insured had taken out a policy of insurance. He disappeared and proceedings were taken in that case before the surrogate's court to have him declared dead. Those proceedings culminated in the entry of a decree, as in this case. In ordinary policies of insurance, the policy does not provide for the particular form of proof of death. As the Supreme Court said in that case that in view of the statute which prescribes the rule of evidence and which is considered as proof of death where such question comes in issue, it had to be observed, and consequently the efforts of the insurance company to prove by the mortality tables that the insured was still likely to be alive, was immaterial and irrevelant. In the case under consideration, the by-laws distinctly provide for a proof of actual death, and it expressly contracts against the effect of the presumption afforded by our statute. The cases are manifestly distinct.

Under all the circumstances, I am satisfied that the

majority rule which upholds the legality of the by-laws which provide for proof of actual death and attempt to dispense with the presumption raised by our statute, is a valid, reasonable provision which parties may stipulate to be binding upon them, and which provision does not offend or contravene the public policy of this state.

I therefore find a verdict in favor of the defendant, no cause of action.